John G. OECHSNER, Jr., Appellant,

v.

AMERITRUST TEXAS, N.A., Independent Executor of the Estate of John G. Oechsner, Sr., Deceased, Scottish Rite Hospital for Crippled Children and Elvira Lopez, Appellees.

No. 08-92-00032-CV.

Court of Appeals of Texas,
El Paso.

Oct. 14, 1992.

Rehearing Overruled Nov. 12, 1992.

Ted Hollen, James M. Speer, Jr., El Paso, for appellant.

William T. Kirk, Mounce & Galatzan, Richard Yetter, E. Link Beck, Beck & James, El Paso, for appellees.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from a will contest. Appellant John G. Oechsner Jr. and his sister, Kathleen Gilliland, contested the Application for Probate of the Last Will and Testament and Codicil thereto of their father, John G. Oechsner Sr. The jury rendered a verdict in favor of Appellees, Scottish Rite Hospital and Elvira Lopez, beneficiaries under the will and codicil. In four points of error, Appellant challenges the judgment of the trial court. We affirm.

## I. SUMMARY OF THE EVIDENCE

John G. Oechsner Sr. and his wife, Maren Oechsner, executed largely identical wills leaving their respective properties in trust to each other, upon the death of either of them, then to their children, John Oechsner Jr. (hereinafter Oechsner Jr.) and Kathleen Gilliland, upon the death of the surviving spouse. Maren Oechsner subsequently changed her will on January 29, 1980, without her husband's knowledge and completely disinherited him. John G. Oechsner Sr. was predeceased by his wife, who died on January 1, 1985. On January 3, 1985, two days after his wife's funeral, Oechsner Sr. was advised of the existence of the provision in his late wife's will regarding his disinheritance, and as a result, became upset about the disposition of the properties and the fact that he had not previously been told of the change. Moreover, Oechsner Sr. became upset by his children's attempt to inventory household items shortly after his wife's death. Thereafter, disagreement and conflict arose between Oechsner Sr. and his children concerning the inventorying and disbursement of the assets of Mrs. Oechsner's estate.

On January 29, 1985, less than a month after his wife's death, Oechsner Sr. executed his Last Will and Testament devising his entire estate to the Texas Scottish Rite Hospital For Crippled Children. No provision was made for his son or daughter.

Efforts to settle his late wife's estate continued until October 1985 at which time they were concluded.

On October 24, 1985, Oechsner Sr. executed a codicil to his will which left his home to his housekeeper, Elvira Lopez. At the time of the execution of both the will and codicil, Oechsner Sr. was ninety-three years old.

John Oechsner Sr. died on October 31, 1988. Appellant, John Oechsner Jr. and his sister, Kathleen Gilliland, instituted this action on November 11, 1988, contesting both the will and codicil of their father. As contestants, they alleged John Oechsner Sr. lacked testamentary capacity when he executed both the will and codicil because he was suffering under some form of insane delusion and was subjected to undue influence by the Scottish Rite Hospital and Elvira Lopez.

## II. DISCUSSION

In his first point of error, Appellant argues the trial court erred in overruling his objection to the definition of insane delusion, as requested by Appellees and included in the court's charge. In Point of Error No. Two, Appellant contends the trial court erred in failing to submit his requested definition of insane delusion.

 . We note at the outset that Appellant timely tendered his own instruction on insane delusion and objected to the instruction as submitted to the jury. Appellant, however, failed to have his proposed instruction noted as "refused" or "modified," nor was the proposed instruction signed by the trial court. Generally, to preserve review on appeal of a trial court's refusal or modification of a requested instruction, question, or definition, established rules of procedure require that the trial court endorse "refused" or "modified" on the same and sign it.[1] Tex.R.Civ.P. 276. In spite of Rule 276, this Court has held that such

error is properly preserved even when the proposed instruction does not contain the judge's signature if "the record clearly demonstrates that the instruction was 'timely presented, opposing counsel knew it was before the trial court and the trial court clearly refused to submit it.' " *Chemical Express Carriers, Inc. v. Pina*, 819 S.W.2d 585, 589 (Tex.App.—El Paso 1991, no writ) (quoting *American Motorists Insurance Company v. Lynn*, 762 S.W.2d 229 (Tex.App.—El Paso 1988, writ denied). The record in the instant case reveals that Appellant not only failed to get the trial court's signature on the requested instruction, but additionally failed to have the trial court endorse the instruction as "refused" or "modified". Nonetheless, Appellant timely and specifically objected to the trial court's proposed charge, opposing counsel was made fully aware of Appellant's objection, and the trial court clearly and unequivocally overruled Appellant's objection to the charge. Accordingly, we find that even though Rule 276 was not fully complied with, Appellant's asserted error is properly preserved. *Chemical Express*, 819 S.W.2d at 589.

 The form of definitions and instructions submitted to a jury rests upon the sound discretion of the trial court. *Nixon v. Sipes*, 667 S.W.2d 223 (Tex.App.—Texarkana 1984, writ ref'd n.r.e.). In that regard, "[t]rial courts are allowed 'considerable discretion in deciding which instructions are necessary and proper.' " *Texas Employers Insurance Association v. Duree*, 798 S.W.2d 406, 412 (Tex.App.—Fort Worth 1990, writ denied) (quoting *Johnson v. Whitehurst*, 652 S.W.2d 441, 447 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). A proper instruction is one that

---

1. Tex.R.Civ.P. 276 provides as follows:
 When an instruction, question, or definition is requested and the provisions of the law have been complied with and the trial judge refuses the same, the judge shall endorse thereon "Refused," and sign the same officially. If the trial judge modifies the same the judge shall endorse thereon "Modified as follows: (stating in what particular the judge has modified the same) and given, and exception allowed" and sign the same officially. Such refused or modified instruc-

tion, question, or definition, when so endorsed shall constitute a bill of exceptions, and it shall be conclusively presumed that the party asking the same presented it at the proper time, excepted to its refusal or modification, and that all the requirements of law have been observed, and such procedure shall entitle the party requesting the same to have the action of the trial judge thereon reviewed without preparing a formal bill of exceptions.

both assists the jury and is legally correct. *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 822 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). An instruction that either misstates the law or which tends to mislead the jury fails to meet the above criteria for legal correctness. *Texaco*, 729 S.W.2d at 768, 822.

A trial court's refusal to submit a requested instruction will not be overturned on appeal unless the court abused its discretion. *Magro v. Ragsdale Brothers, Inc.*, 721 S.W.2d 832, 836 (Tex.1987); *Mobile Chemical Company v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). On review to determine if there has been an abuse of discretion, the error must have caused or can be reasonably calculated to have caused the rendition of an improper verdict. Tex.R.App.P. 81(b)(1); *Chemical Express*, 819 S.W.2d at 585, 589.

■ The record reflects that the instructions submitted to the jury in the present case, which consisted of a definition of testamentary capacity together with that of insane delusion, provided as follows:

Testamentary capacity is composed of all four of these elements being present at the same time: (a) the ability of JOHN G. OECHSNER SR., to know and understand the business in which the [sic] he is engaged; (b) the ability of JOHN G. OECHSNER, SR., to know the effect of the act of making the will; (c) the capacity of JOHN G. OECHSNER, SR., to know the objects of his bounty and their claims upon him; and (d) the capacity of JOHN G. OECHSNER, SR., to know the general nature and extent of his property.

To make a valid will, the person making the will must have testamentary capacity, and must not, at the time of the execution of the will, be laboring under an insane delusion, which influenced the person executing such will to dispose of his property in a way which he would not have disposed of it but for the insane delusion.

You are further instructed that by 'insane delusion' is meant the belief of a state of supposed facts which no rational person would believe.[2]

■ In addition to the submission of the above instruction, Appellant requested that the following language further defining "insane delusion" be given:

An insane delusion is a misconception of fact, or an abnormal mental attitude, due to some organic defect in the brain or some functional disorder of the mind. That it is so due may be inferred from its purport, if too fantastic to be the product of a normal mind; or from its fixed and persistent nature, if conceived without foundation in reason; or from its progressive immoderateness if originally induced by some rational cause; or from its origin in a previous state of irrationality.

Appellant contends that the trial court's failure to submit the above requested language constituted an abuse of discretion, and thus error. We disagree.

In *Knight v. Edwards*, 153 Tex. 170, 264 S.W.2d 692 (1954), the Supreme Court set up a two-pronged test defining insane delusion: (1) the belief of a state of supposed facts that do not exist; and (2) which no rational person would believe. This test, adopted in our jurisdiction as early as 1886 in *Vance v. Upson*, 66 Tex. 476, 1 S.W. 179 (1886), was followed in *Lindley v. Lindley*, 384 S.W.2d 676 (Tex.1964) and later in *Bauer v. Estate of Bauer*, 687 S.W.2d 410, 411 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Between 1886 and 1985, the courts of this state have had little, if any, occasion to enlarge upon the above

---

2. A careful review of the record before us indicates that the trial court relied on previous case law in an attempt to form the jury charge inasmuch as there are no applicable provisions pertaining to wills or will contests found in the Texas Pattern Jury Charges. This was proper in view of the Rule 277 mandate providing that the court shall instruct the jury to enable it to reach a verdict, and because trial courts would otherwise have to remain silent in situations where there is no appropriate pattern charge. Tex. R.Civ.P. 277 [Emphasis added]. *Duree,* 798 S.W.2d at 413.

definition or to prescribe a more detailed or precise test. We choose not to expand on that definition. *See Knight*, 264 S.W.2d at 695.

Given the above established definition of insane delusion, an instruction, identical to the instruction submitted in the instant case, was considered by the Texas Supreme Court in *Lindley*, 384 S.W.2d at 676.[3] The question presented in *Lindley*, was whether the trial court erred in refusing to instruct the jury as to the issue of insane delusion, once the issue was sufficiently raised by the evidence. The Supreme Court found error and reversed and remanded. *Id.* at 683. The Court held that where testamentary capacity is at issue, "an additional instruction on insane delusion is necessary where the issue is fairly raised by the evidence." *Id.* at 679. The Court further noted that the instruction sought by the appellant in *Lindley* (and submitted by the trial court in the instant case) had been previously approved by two Courts of Civil Appeals. *Id.* at 681 n. 3, citing *Peareson v. McNabb*, 190 S.W.2d 402 (Tex.Civ.App.—Galveston, 1945, writ ref'd. w.o.m.) and *Gulf Oil Corp. v. Walker*, 288 S.W.2d 173 (Tex.Civ.App.—Beaumont 1956, no writ).

The additional language attempting to explain or further define insane delusion which was submitted by Appellant to the trial court for its consideration is nothing more than a discussion of the concept of insane delusion, as advanced by courts of jurisdictions other than our own. *See Lindley*, 384 S.W.2d at 679; Annotation, *Digests, Wills*, 175 A.L.R. 882, 889 (1948).

We find that the trial court did not abuse its discretion by refusing to submit Appellant's requested definition of insane delusion insofar as it varies from the established definition as adopted by courts of this state for over 100 years. Moreover, the inclusion of such a proposed definition would have served to burden the jury with a surplus instruction. *Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex. 1984). Accordingly, Appellant's second point of error is overruled.

In Appellant's first point of error, it is urged that the trial court erred in overruling Appellant's objection to the charge as submitted to the jury. On appeal, Appellant complains, for the first time, that the charge as submitted to the jury was defective because the instruction failed to link the concepts of testamentary capacity and insane delusion. Specifically, Appellant, in his brief on appeal, contends that "[t]here is nothing in the instruction which refer [sic] the existence or non-existence of an insane delusion to testamentary capacity."

We note that in the trial court below, Appellant wholly failed to object to the jury charge on this specific ground. To the contrary, the trial objection was limited to the failure of the court to include the "extra" language requested by Appellant, as fully addressed above in Point of Error No. One. Consequently, Appellant has failed to properly preserve error for review. A party is confined to the jury instruction objection made at trial; any variant complaint on appeal is waived. *Lakeway Land Co. v. Kizer*, 796 S.W.2d 820, 825 (Tex. App.—Austin 1990, writ denied).[4] Appellant's first point of error is overruled.

3. The instruction considered by the Supreme Court in *Lindley* is set out in full in footnote form. *Lindley v. Lindley*, 384 S.W.2d at 678 n. 1 and 2.

4. Recently, the Texas Supreme Court expressed concern regarding the complexity of the current method for preserving a complaint about the jury charge, stating, "[i]n our State's procedural jurisprudence, there are no rules more recondite than those pertaining to the preparation of the jury charge." *State Department of Highways & Public Transportation v. Payne*, No. C-9343, 1992 WL 233650, at 4, 838 S.W.2d 235, 240 (Tex. Sept. 23, 1992). The Court further stated *in dicta*, "[t]here should be but one test for deter-

mining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. The more specific requirements of the rules should be applied, while they remain, to serve rather than defeat this principle." Id. at 5. Appellant argues this decision excuses his failure to object specifically and properly to the jury charge in the trial court. However, even assuming the above language to be a holding of the Court, Appellant's objection below did not "timely and plainly" make the trial court aware of the specific complaint Appellant now urges on appeal—

In Point of Error No. Three, Appellant contends that the trial court erred in overruling his motion for new trial. Specifically, Appellant, in his motion for new trial, asserted that the jury's findings to questions one and two are against the great weight and preponderance of the evidence.[5]

■ A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (Tex.1951). The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher,* 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). It is not within the province of the court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508 (1947); *Clark v. National Life & Accident Ins. Co.,* 145 Tex. 575, 200 S.W.2d 820 (1947).

■ As noted above, for the past century, Texas courts have defined an insane delusion as "the belief of a state of supposed facts that do not exist, and which no rational person would believe." *See Knight v. Edwards,* 153 Tex. 170, 264 S.W.2d 692 (1954). The specific theory advanced by Appellant as to the existence of an insane delusion centers around the assertion that his father labored under the misconception that his children had "taken property from him or had caused his wife to have left the children the property in her

Will." Thus, the principal question in the instant case is whether it was rational for John Oechsner Sr. to believe that his children were trying to take property from him or had influenced their mother to disinherit him.

The record shows testimony by Appellant's psychologist, Dr. Luis Natalicio, that Oechsner Sr. suffered from primary degenerative dementia and possessed paranoid delusions of mistrust. Moreover, there was testimony that the Testator was "out of his mind" or had "no control over his thoughts," and that he wrongly accused persons of stealing from him. The record further establishes that Dr. Natalicio's conclusions were based largely on interviews with and materials provided by persons interested in an outcome favoring lack of capacity, and he never had the opportunity to observe or speak with John Oechsner Sr. firsthand.

On the other hand, there was extensive testimony that Oechsner Sr. did not appear "out of it" or "disoriented" during the execution of his will and codicil, that generally he possessed a good short-term and long-term memory and further, that he was cognizant of current events. Thus, despite conflicting testimony, it is for the jury to determine the weight to be given that testimony and to resolve any conflicts therein. *Carrasco,* 623 S.W.2d at 772.

Further, the record establishes that Testator's attitude toward his two children changed dramatically only *after* the passing of his wife, and that he was upset because he felt his children had instigated his wife's disinheritance of him. Although evidence showed that relations between Oechsner Sr. and his children had been strained prior to Mrs. Oechsner's death, the attorneys who assisted Oechsner Sr. in the settling of his wife's estate and in executing the new will, testified that he was fully knowledgeable of the settlement of the es-

that the instruction fails to link the concepts of testamentary capacity and insane delusion.

**5.** Jury questions one and two required the jury to determine whether Oechsner Sr. possessed testamentary capacity at the time of the execution of his will and subsequent codicil. The

jury answered "yes" to both questions. On review, Appellant contends the jury could not have found that his father possessed testamentary capacity, because he was operating under an insane delusion at the time of the execution of his will and codicil.

tate and executed the will and codicil in response to his children's behavior before and during that period. Indeed, Oechsner Sr. was unaware of the change in Mrs. Oechsner's will until two days after her funeral and was upset by his children attempting to inventory household items shortly after her death. Additionally, there was evidence to indicate that the two children were attempting to obtain title to their father's home on 3010 Copper despite his homestead rights. Finally, Mrs. Oechsner had signed over her AT & T stock, her separate property, to the children.[6]

The record further establishes curious events surrounding the execution of Maren Oechsner's will, although the record is not clear whether or not Oechsner Sr. knew of the circumstances. Craig Gilliland, Kathleen Gilliland's son and Mrs. Oechsner's grandson, was an attorney and prepared the will based on a letter from Mrs. Oechsner asking that an alternate executor be added. While the record establishes that he never spoke to his grandmother further, Craig Gilliland prepared the will and inserted a paragraph expressly disinheriting Oechsner Sr. Moreover, Mrs. Oechsner's will was executed away from the Oechsner home, at a local dentist's office to which Kathleen Gilliland had taken her mother, although evidence showed that she was bedridden with a condition related to multiple sclerosis and had problems speaking.

Based on the foregoing, we find that the jury could have concluded that if indeed Oechsner Sr. believed his children were attempting to take property from him and had influenced his wife to disinherit him, this belief was not irrational. Further, the jury could have come to this conclusion based simply upon the fact that John Oechsner Jr. and Kathleen and Craig Gilliland were involved together in the changing of the will. Oechsner Sr.'s own grandson had drawn up a will radically different from the wills the couple had made togeth-

er many years before, and further, did so without Oechsner Sr.'s knowledge.

We have carefully examined all of the evidence in the instant case in determining whether the evidence is sufficient to support the jury's answers to issues one and two. We find the jury's answers not to be against the great weight and preponderance of the evidence as to be manifestly unjust and accordingly, find that the trial court did not err in denying Appellant's motion for new trial. Appellant's Point of Error No. Three is overruled.

In Appellant's fourth and final point of error, he argues the trial court committed fundamental error by improperly empaneling a jury of twelve persons when six was required.

 The Texas Supreme Court has held that the existence of fundamental error is rare. *American General Fire and Casualty Company v. Weinberg,* 639 S.W.2d 688, 689 (Tex.1982). It survives today only in those rare "instances in which the record on appeal shows on its face that the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Texas Constitution." *Smiley v. Johnson,* 763 S.W.2d 1, 4 (Tex.App.1988); *Central Education Agency v. Burke,* 711 S.W.2d 7, 8 (Tex.1986); *Grounds v. Tolar Independent School District,* 707 S.W.2d 889, 893 (Tex.1986); *Texas Industrial Traffic League v. Railroad Commission,* 633 S.W.2d 821, 823 (Tex.1982); *Ramsey v. Dunlop,* 146 Tex. 196, 205 S.W.2d 979, 985 (1947); *Elbar, Inc. v. Claussen,* 774 S.W.2d 45, 52 (Tex.App.—Dallas 1989, writ dism'd). Fundamental error may be raised for the first time on appeal. *Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex.1982); *McCauley v. Consolidated Underwriters,* 157 Tex. 475, 478, 304 S.W.2d 265, 266 (1957); *Elbar, Inc.,* 774 S.W.2d at 52.

Courts in our jurisdiction have refused to find the existence of fundamental error in a

---

6. Apparently Oechsner Sr.'s distrust of his children did not become acute until after the passing of his wife. Prior to her death, Oechsner, Sr. had signed over his interest in a potash lease and joined his wife in the transfer of a family

farm to his two children. Additionally, Oechsner Jr. also borrowed $38,000 from his parents prior to his mother's death in order to purchase property outright that he and his father had purchased together in Dallas.

trial court empaneling an improper number of jurors holding that a litigant can waive a right to a certain number of jurors just as he can waive his right to jury trial. *Daily v. Wheat*, 681 S.W.2d 747, 758 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Buck v. State*, 599 S.W.2d 810 (Tex.Crim. App.1980), *overruled on other grounds*, and *Rideau v. Parkem Industrial Services, Inc.*, 917 F.2d 892 (5th Cir.1990).

We have reviewed the record and find that while Appellant asserts that during preliminary proceedings, the trial court announced it would proceed with twelve jurors because it always seated twelve, there is no record of any such preliminary proceeding. Of greater significance, Appellant has failed to provide this Court with a full and complete record which would reflect any timely and specific objection to a trial by jury of twelve individuals as well as any ruling of the trial court. Consequently, Appellant has once again failed to preserve error for review. Tex.R.App.P. 52(a). Moreover, the sparse record before us which touches on Appellant's complaint, reveals testimony received at a hearing on a motion for new trial that tends to establish that the parties were given an option by the court and "agreed" to a jury of twelve. Appellant's fourth point of error is overruled.

Having overruled each of Appellant's points of error, the judgment of the trial court is affirmed.