**A.P. KELLER DEVELOPMENT, INC., Appellant,**

v.

**ONE JACKSON PLACE, LTD., Jackson Place Investments, One Place Partners, Congress Street Properties, Inc., and The Parkway Company, Appellees.**

No. 08–93–00290–CV.

Court of Appeals of Texas, El Paso.

Dec. 8, 1994.

Jon L. Tankersley, Brown, Parker & Leahy, L.L.P., Houston, for appellant.

Michael J. Mazzone, Dow, Cogburn & Friedman, Houston, for appellees.

Before BARAJAS, LARSEN and McCOLLUM, JJ.

### OPINION

McCOLLUM, Justice.

### NATURE OF THE CASE

A.P. Keller Development, Inc., appeals an order dismissing its suit on the grounds of forum non conveniens. On March 6, 1992, Appellant sued Appellees[1] for breach of contract. On April 27, 1992, Cross Appellants entered a special appearance to object to jurisdiction and, subject thereto, moved to dismiss on the grounds of forum non conveniens, in which motion Appellee joined. On April 13, 1993, the trial court overruled Cross Appellants' special appearance,[2] but granted Appellees' motion to dismiss. We affirm the order of the trial court.

### I. SUMMARY OF THE EVIDENCE

Appellant is a Texas corporation with its principal place of business in Houston, Texas. In 1987, Appellant entered into a written management agreement with OJPL, the owner of a 14-story office building in Jackson, Mississippi, known as "One Jackson Place," whereby Appellant undertook to perform certain managerial duties for One Jackson Place. In 1992, OJPL terminated the ten-year management agreement by serving Appellant with written notification thereof, in response to which Appellant filed suit.

Cross Appellant OJPL is a limited partnership under the laws of the State of Mississippi. Cross Appellant JPI, a general partnership formed under the laws of the State of Texas, owns a 95 percent interest in OJPL. Cross Appellant OPP, a general partnership formed under the laws of the State of Mississippi, owns a 77 percent interest in JPI. Cross Appellant CSP, a Delaware corporation with its principal place of business in Jackson, Mississippi, owns a 48.5 percent interest in OPP. Appellee TPC, a Texas corporation, owns the remaining 51.5 percent interest in OPP.

The evidence at the hearing on the motion to dismiss consisted chiefly of the locations of the witnesses Appellees would call at trial to prove their case. There was evidence that Appellees intended to call some thirty-six building tenants, including the United States Attorney for the Jackson, Mississippi, area, to identify who performed certain management functions and assess their satisfaction therewith. Not surprisingly, all tenants reside in and around Jackson, Mississippi. There was evidence Appellees intended to call some fifteen building vendors, ranging from those who contracted to provide services such as elevator maintenance and building cleaning to those who contracted to provide "tenant finish" services such as electricians, painters, and general laborers. All vendors reside in and around Jackson, Mississippi. There was evidence that Appellees intended to call five building employees, all of whom reside in Jackson, Mississippi. There was evidence Appellees intended to call several of their officers, all of whom reside in and around Jackson, Mississippi.

There was also evidence that a suit involving the same parties and claims was pending before the Circuit Court of Hinds County, Mississippi, at the time of the hearing, the proceedings of which were stayed pending the outcome of the hearing in the case at bar. Further, there was argument by counsel, which was unsupported by record evidence, that the suit implicated the public policy of

---

1. Where we do not designate a party by name, we employ the term Cross Appellants to refer collectively to One Jackson Place, Limited (OJPL), Jackson Place Investments (JPI), One Place Partners (OPP), and Congress Street Properties, Inc. (CSPI). We use the term Appellees to refer collectively to Cross Appellants and The Parkway Company (TPC). We use the term Appellee to refer to TPC.

2. In a single cross point of error, Cross Appellants attack the judgment overruling their special appearance. Because we find our resolution of the forum non conveniens issue dispositive of the case, we do not address Cross Appellants' cross point of error.

the State of Mississippi because Appellant allegedly failed to comply with certain real estate licensing requirements of Mississippi law. There was also argument that the applicable law for the case in general would be the law of the State of Mississippi.

## II. *DISCUSSION*

In five points of error, Appellant attacks the trial court's order dismissing the case, claiming the court misapplied the applicable law and that the evidence was legally and/or factually insufficient to support the court's order. Although Appellant raises five separate points of error, it does not brief or argue the points seriatim. Indeed, Appellant's argument is principally directed at the sufficiency of the evidence and the claim that the trial court placed undue emphasis on three forum non conveniens factors.

■ A determination of forum non conveniens is a finding that a court should not exercise jurisdiction in a given case because another forum, also possessing jurisdiction, can more appropriately act. *McNutt v. Teledyne Indus.,* 693 S.W.2d 666, 668 (Tex. App.—Dallas 1985, writ dism'd w.o.j.). It is an equitable doctrine exercised by a court in the interest of justice to resist the imposition of inconvenient jurisdiction upon litigants. *Sarieddine v. Moussa,* 820 S.W.2d 837 (Tex. App.—Dallas 1991, writ denied).

■ We begin our analysis with an enunciation of the applicable standard of review; *id est,* to reverse the trial court, we must find it abused its discretion. *Sarieddine v. Moussa,* 820 S.W.2d at 841. "A [party] who attacks the ruling of a trial court as an abuse of discretion labors under a heavy burden." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Amador v. Tan,* 855 S.W.2d 131, 133 (Tex.App.—El Paso 1993,

writ denied). Another way of stating the test is whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators,* 701 S.W.2d at 242, citing *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984); *Amador,* 855 S.W.2d at 133. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators,* 701 S.W.2d at 242, citing *Southwestern Bell Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965). A mere error of judgment is not an abuse of discretion. *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989).

■ Although the Texas Supreme Court has neither enthusiastically embraced the doctrine of forum non conveniens, nor revealed fully its contours, it has acknowledged the existence of the doctrine as announced by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Flaiz v. Moore,* 359 S.W.2d 872, 874 (Tex.1962). Quoting *Gulf Oil,* the *Flaiz* Court set out the following factors relevant to a forum non conveniens determination: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the enforceability of a judgment if one is obtained; (4) the burden imposed upon the citizens and courts of Texas in trying a case that has no relation to Texas; (5) the general interest in having localized controversies decided locally; and (6) the interest in having a diversity case tried in a forum that is familiar with the law that must govern the action. *Flaiz v. Moore,* 359 S.W.2d at 874. Factors one through three concern the private interests of the litigants and are commonly referred to as private interest factors, while factors four through six are known as public interest factors. A plaintiff obviously has an interest in selecting a forum in which to bring his cause of action and "unless [the foregoing factors show that] the balance [of convenience] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil v. Gilbert,* 330 U.S.

at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062, *quoted in Van Winkle–Hooker Co. v. Rice*, 448 S.W.2d 824, 827 (Tex.Civ.App.—Dallas 1969, no writ).

In points of error two through four, Appellant claims that the evidence was legally and factually insufficient to meet the foregoing test.

█ In considering a "no evidence" or legal insufficiency point, we consider only the evidence that tends to support the fact finder's findings, and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *United States Fire Ins. Co. v. Ramos*, 863 S.W.2d 534, 538 (Tex.App.—El Paso 1993, writ denied); *Mexico's Indus. Inc. v. Banco Mexico Somex*, 858 S.W.2d 577, 580–81 (Tex.App.—El Paso 1993, writ denied).

█ A factual insufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); *Chandler v. Chandler*, 842 S.W.2d 829, 832–33 (Tex. App.—El Paso 1992, writ denied); *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d 131, 136 (Tex.App.—El Paso 1992, writ denied). The reviewing court cannot substitute its conclusions for those of the fact finder. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d at 136; *Chandler v. Chandler*, 842 S.W.2d at 833. It is not within the province of the court to interfere with the fact finder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792 (1951). Where there is conflicting evidence, the fact finder's verdict on such matters is generally regarded as conclusive. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204

S.W.2d 508 (1947); *Chandler v. Chandler*, 842 S.W.2d at 833; *Oechsner v. Ameritrust Texas, N.A.*, 840 S.W.2d at 136.

## A. Private Interests

█ Ease of access to sources of proof is the first of three private interest factors announced in *Gulf Oil*. Because this case revolves around the performance of a property management contract, live witnesses are the primary source of proof for all parties. The evidence we chronicle above establishes that all of Appellees' witnesses live in and around Jackson, Mississippi. Appellant does not challenge this fact. Moreover, Appellant presented no evidence that it intended to call at trial witnesses outside the Jackson area. Thus, the first factor favors Appellees.

The second factor is the availability of compulsory process for unwilling witnesses. Obviously, Texas cannot compel Mississippi residents to testify in its courts. Mississippi can presumably compel the testimony of all Mississippi witnesses. Appellant makes no effort to address this factor in its brief. This factor clearly favors Appellees.

The third factor is the enforceability of a judgment should one be obtained. Although none of the parties presented evidence on this factor, we note that both states have adopted the Uniform Enforcement of Foreign Judgments Act,[3] which should enhance each party's ability to enforce a judgment in either state. We do not find that this factor favors either party.

## B. Public Interest

█ The fourth factor, the first of three public interest factors, is the burden imposed upon the citizens and courts of Texas in trying a case that has no relation to Texas. The fifth factor is the general interest in having localized controversies decided locally. The final factor is the general jurisprudential interest in having a case tried in the forum most familiar with the law that will govern it. The first factor, the burden imposed, turns on the strength of the relationship between the State of Texas and this litigation. We

---

**3.** *See* Miss.Code Ann. §§ 11–7–301 to 11–7–309 (1991); Tex.Civ.Prac. & Rem.Code Ann. §§ 35.001 to 35.008 (Vernon 1986 & Supp.1994).

note initially that a thorough analysis of the first factor will subsume, and be largely duplicative of, the entire public interest analysis described in *Gulf Oil*. How, after all, can a thorough assessment be made of the relationship between Texas and this litigation without considering the virtue of having a tribunal apply a brand of law with which it is familiar, or without weighing the general social and jurisprudential interest in having localized controversies resolved locally? We find this potential largely the result of an unfairly literal interpretation of *Gulf Oil*. If we are to give meaning to each of the three public interest factors, we must interpret the fourth factor to refer to a relationship as it is established by the residence of the parties or the nature or subject matter of the dispute.

Although Appellant's status as a Texas corporation provides some relationship to Texas, at least to the extent Appellant was harmed by the termination of the management contract, other factors indicate that this litigation has a much greater relationship to the State of Mississippi. This is a dispute over the management of an office building in Jackson, Mississippi. Appellant contracted to *manage* the building. This necessarily must have been largely done in Jackson. In its brief, Appellant argues that its Houston bank account suffered when the contract was terminated. This is undoubtedly true. This harm, however, is the product of Appellant's residence, which is only one of three issues we identify above as sources of a relationship between Texas and this litigation. The nature of the controversy establishes a strong relationship between this litigation and the State of Mississippi. This is a dispute over the *performance* of a management contract. Because the situs of the building to be managed is Jackson, Mississippi, it is Appellant's performance in Jackson that is relevant. The subject matter of the controversy, to the extent we can discern a tangible one, again returns us to the Jackson, Mississippi office building known as One Jackson Place. Although the contract itself might arguably be characterized as the subject matter of the controversy, we emphasize that it is the performance of the contract that is at the center of this lawsuit. The fourth factor favors Appellees.

The fifth factor we examine is the general interest in having localized controversies decided locally. We recognize that this is not an exclusively local matter. Appellee's decision to hire a Texas property management company imputes to the character of this controversy some positive quantum of non-local flavor. The property to be managed, however, lies in Jackson, Mississippi. Three out of the five parties that have ownership interests in the property are Mississippi entities. Moreover, the conduct at issue in this dispute concerns the performance of Appellant's management obligations, which obligations necessarily have as their focal point the property itself. Because this suit concerns the extent to which Appellant performed its management obligations with regard to discrete property located in Jackson, Mississippi, it is essentially a controversy of local interest to Jackson. The fifth factor favors Appellees.

The sixth and final factor we consider is the general jurisprudential interest in having a case tried in a forum that is familiar with the law that governs the action. Appellant, in its brief, appears to concede that Mississippi contract law will govern this action. Interestingly, although Appellees seize on this point, they neither allege nor provide evidence that Mississippi contract law differs meaningfully from Texas contract law. We are, of course, cognizant of the potential for differences in the states' law of contract, particularly differences that are difficult to identify at this point in the litigation. Given the absence of even allegations of differing contract law, we are reluctant to impute significant weight to this factor. The very potential for difference, however, causes this factor to favor Appellees slightly.

We have in the preceding paragraphs attempted to address the relevant factors and the parties that each favors. Although we have taken care to explicitly find that each of the six factors favors Appellant, Appellees, or is neutral, we are acutely aware that our analysis is limited to assessing the sufficiency of the evidence. We make explicit findings regarding each factor largely for analytical completeness and because the trial court did

not make explicit findings with regard to each. A casual reading of our findings yields the conclusion that we would decide the case just as the trial court decided it. The standard of review, however, renders this fact neither logically necessary nor particularly relevant to our decision.

The numerosity of the factors, and the possible permutations in which they can combine, as well as the absence in case law of any guidance concerning which factors or permutations thereof should lead to a particular result, give to the trial court an extraordinarily wide latitude within which to exercise its discretion. This fact was not lost on the trial court. The following colloquy between the trial court, Appellees' counsel, and Appellant's counsel at the hearing on the motion to dismiss, although it occurred during argument on the issue of jurisdiction, is revealing of the difficulty of the trial court's task:

> THE COURT: You know, it's kind of like a conflict-of-laws question. They give you a lot of factors. But when it comes right down to it, it's really not that clear. It's a question of applying facts to the particular case.
> MR. MAZZONE: And that's not easy.
> THE COURT: No.
> MR. TANKERSLEY: Not by any means.

The evidence supporting the trial court's decision is plentiful. Of six relevant factors, none favors Appellants and five favor Appellees. Moreover, it is the evidence we have cited above to explain our findings with regard to the five factors which favor Appellees that we find critical to the specific analytical task at hand. We find this evidence strongly supportive of the trial court's order granting the motion to dismiss on forum non conveniens grounds and would actually be mildly skeptical had it reached a different conclusion. Further, independent of our own conclusion regarding the outcome which the evidence most supports, we find the evidence sufficient to justify the trial court's order. Accordingly, Appellant's points of error two through four are overruled.

In points of error one and five, Appellant claims the trial court misapplied the law by placing undue emphasis on factors one, two, six, and on the cost of obtaining the attendance of witnesses.

Appellant would have us mandate that each factor identified in *Gulf Oil* be given equal weight without regard to the relationships among the various factors or to the relative importance of any one factor to our facts. We find such a myopic mode of analysis neither required by case law nor recommended by reason. *Gulf Oil* itself recognizes that the importance of the six factors will vary from case to case because of the potential for the factual context of a case to cause a court to focus, unavoidably and quite appropriately, on several or fewer factors. Indeed, *Gulf Oil* forecasts that the private factors are "likely to be *most* pressed...." *Gulf Oil v. Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843 [emphasis added]. We think it unremarkable that a court would find most important those factors that are most pressed. Moreover, the prediction that certain factors will be most pressed recognizes that those factors will likely be most important. The prediction, and the opinion in which it appears, convey no subliminal groan whereby the Supreme Court laments its expectation that each identified factor will not be deemed equally important in myriad and unequal cases. Further, *Gulf Oil* notes that "[t]here *may also* be questions as to the enforceability of a judgment if one is obtained." *Id.* [Emphasis added]. *Gulf Oil* established a six-prong test, and we conclude, therefore, that enforceability of a judgment is not intended to be dispositive by itself. *Gulf Oil* does not, thus, command that courts invariably consider the potential enforceability of a judgment. The statement that there may be questions about enforceability necessarily recognizes that there may not be such questions, and that any extant questions may be many or few. Given this recognition, we think it appropriate for a court to gauge the significance of this factor by the existence and numerosity of questions about the enforceability of a judgment, and by the perceived importance of the factor itself to the litigation as a whole. The foregoing textual examples from *Gulf Oil* reveal that the United States Supreme Court did not therein promulgate rigid analytical rules to be me-

chanically applied to every conceivable set of facts. *Gulf Oil* instead offers a flexible framework that identifies many factors, which need not be deemed equally important in every case and which might prove too few or too many when applied to any given case.

Reason, too, argues against Appellant's proposed rule. We think the facts of a case will infrequently allow a court to identify all six factors with sufficient precision to quantify the importance of each and then adjust its assessment to ensure that the weight of each factor is precisely equal to the others. Even when possible, such an analysis would almost never be wise. The subjects of litigation are too varied to succumb to simple rules capable of blind application. Although the judiciary might welcome the relative simplicity of segregating facts into six categories, determining which party each category favors, and then ruling for the party that garners a majority of the categories, it would thereby abdicate the role assigned and forsake the responsibilities entrusted to it. We are judges, not accountants.

Even if we embraced Appellant's efforts to bring mathematical precision to this inherently amorphous area of the law, our task would be difficult because most of the evidence and argument at the hearing on the motion to dismiss concerned the residence of likely witnesses. This is a product of the nature of the case. Because Appellant's performance of the contract is at issue, live witnesses who had contact with Appellant's agents constitute the primary source of proof. Appellant does not dispute that these witnesses reside in Mississippi. The trial court's consideration of factors one and two, and of the cost of obtaining the attendance of witnesses was not only appropriate but necessary. Indeed, any analysis that failed to impute significant weight to these factors would be inadequate.

We find no evidence that the trial court emphasized the applicability of Mississippi law to any great extent. Appellant cites none. To the contrary, the order from which Appellant appeals recites that:

> The Court finds and concludes that the Circuit Court of Hinds County, Mississippi is an available and adequate forum for the adjudication of this dispute, and that the Circuit Court of Hinds County, Mississippi is the more appropriate forum for the adjudication of this dispute given the relative ease of access to sources of proof, the availability of compulsory process for attendance of unwilling witnesses, the cost of obtaining the attendance from willing witnesses, the burdens imposed upon the citizens of the State of Texas and this Court given the limited interest of the State of Texas in adjudicating the dispute, and the general interest in having local controversies resolved locally. The Court has also considered the enforceability of a judgment obtained in this Court versus the enforceability of a judgment obtained in Mississippi, and the likelihood that the law of Mississippi will apply to this dispute rather than the law of the State of Texas.

These findings reveal consideration of all factors identified in *Gulf Oil*. Further, we note that Appellant claims the trial court overemphasized three of six relevant factors. We think it difficult to place undue emphasis on one-half of the factors, especially when the other factors were either neutral or favored Appellees. We certainly cannot say that the trial court abused its discretion in finding significant those factors with regard to which it was presented with the most evidence. Accordingly, Appellant's points of error one and five are overruled.

Having overruled Appellant's points of error, we affirm the order of the trial court dismissing the case on the grounds of forum non conveniens.