YOROSHII INVESTMENTS (MAURI-
TIUS) PTE. LTD., Welgas Holdings
Ltd., and Energy Infrastructure
Group Ltd., Appellants,

v.

BP INTERNATIONAL LTD. and
BP Oil International Ltd.,
Appellees.

No. 08–04–00163–CV.

Court of Appeals of Texas,
El Paso.

Sept. 15, 2005.

Rehearing Overruled Jan. 11, 2006.

Craig T. Enoch, Winstead Sechrest & Minick P.C., Austin, for Appellants.

Edward J. Murphy, Beirne, Maynard & Parsons, LLP, Houston, for Appellees.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from the trial court's dismissal of Appellants' lawsuit on the grounds of *forum non conveniens.* For the reasons stated herein, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties to the underlying litigation are foreign corporations suing for allegations related to fraud and breach of fiduciary duty based upon allegedly improper conduct regarding a possible joint venture to build a liquid petroleum gas distribution system in India. The Appellants are three, foreign owned, Mauritius companies, who sued two of British Petroleum's ("BP") subsidiaries related to the project.[1] The

---

1. Appellants originally sued five separate British Petroleum entities but after negotiations

Mauritius companies filed suit in Dallas, Texas. The parties engaged in extensive discovery limited to issues regarding the special appearances filed by the defendants and the Motion to Dismiss for *Forum Non Conveniens* filed by the defendants. After a hearing on the Motion to Dismiss for *Forum Non Conveniens,* the trial court granted the motion and dismissed the case. The trial court entered findings of fact and conclusions of law. Appellants appeal raising seven issues. Issue No. One is a challenge to the trial court's dismissal of the case as an abuse of discretion. Issue Nos. Two through Seven challenge the trial court's specific findings of fact and conclusions of law on the grounds that the findings were either an abuse of discretion or not supported by legally or factually sufficient evidence.

## II. SUMMARY OF RELEVANT FACTS

Appellants are Mauritius based corporations that have been engaged in an attempt to create an entity for the purpose of importing and marketing liquid petroleum gas products ("LPG project") in India. Appellees are English corporations that were approached by Appellants for the purpose of forming a joint venture for the LPG project. Beginning in the early 1990's and continuing over the course of several years, Appellants contacted various entities seeking to market the project and obtain investors, some of whom were Texas companies. Ultimately, four Texas companies expressed an interest in the project and the Appellants engaged in negotiations with the various companies. In 1997, Appellees began discussions with Wimco Petrogas Limited ("Wimco") regarding the project and signed a Confidentiality Agreement.[2] Early in 1998, the Appellants informed Appellees that other companies were seriously considering investing in the project.

The parties continued negotiations and the exchange of information which ultimately resulted in the parties signing of a Memorandum of Agreement ("MOA") in July of 1998. The agreement provided for, among other things, that the parties would negotiate in good faith to obtain final shareholder approval for the project, and that the Appellees would not negotiate with any third party for a proposal similar to the LPG project in India.

Appellants contend that while they engaged in negotiations with Appellees, Appellees merged with Amoco Oil Company, and as a result of the merger, acquired technology related to a synthetic product known as di-methyl ether ("DME"). DME is a form of synthetic LPG and a direct substitute for the products contemplated by the LPG project. Appellants contend that Appellees did not inform Appellants of this significant development and that they engaged in fraudulent conduct which was a breach of their fiduciary duty under

related to special appearance challenges raised by the defendants, the parties entered into a Rule 11 Agreement stipulating to the dismissal of three defendants and a waiver of the special appearance challenges of the remaining two entities.

2. The Confidentiality Agreement included in the record and apparently related to Appellants' claims for damages appears to have been entered into between Wimco and BP International Ltd. The agreement contains an effective date of November 5, 1997 and was signed by R.P. Singh, director, on behalf of Wimco and S.K. Johnston, Associate President on behalf of BP International Ltd. Appellants have contended that Appellees breached this Confidentiality Agreement which resulted in damages to them but have not explained the relationship between Wimco and Appellants. We assume, without deciding, for purposes of our analysis, that the Confidentiality Agreement applies to the parties of this lawsuit and the Indian Project in question.

the agreements related to the LPG project.

Appellees withdrew from participation in the LPG project as of December 1998. Appellants filed suit in Texas asserting a cause of action for fraud and breach of fiduciary duty related to the LPG project on the grounds that Appellees obtained and misused confidential proprietary information as a result of their business relationship with Appellants. Also, as a result of Appellees' alleged misrepresentations, Appellants did not enter into agreements with other potential investors, several of which are located in Texas, and therefore, they suffered harm as a result.

Appellants contend that BP committed fraud based upon its representatives' misrepresentations of BP's business and financial commitment to them with regard to the LPG project. These alleged misrepresentations resulted in Appellants' rejection of other alternative Texas partners. Appellants also contend that BP breached its fiduciary duty to Appellants through its development of a competing product. They also contend that BP engaged in the wrongful use of confidential, proprietary information.

Appellants filed suit in Dallas County, Texas against the BP defendants. After negotiations related to special appearance motions filed by the BP entities, the parties entered into a Rule 11 Agreement whereby certain BP defendants were dismissed and the remaining two withdrew their special appearance motions. The Rule 11 Agreement also contained several other clauses which Appellants contend support their position that suit should be brought and remain in Texas.

BP contends that the MOA and the Confidentiality Agreement signed by the parties provide that any dispute among the parties would be resolved in England under English law. After disputing the jurisdiction and venue in Texas, BP sued Appellants in the High Court of Justice in London seeking a declaratory judgment that the MOA had been properly terminated according to its terms. After a hearing before that court, Justice Morison of the High Court of Justice issued his findings and entered an order abating the English proceedings until such time as the Texas court ruled on the pending *forum non conveniens* motion.

On February 27, 2004, the Texas court held a hearing on BP's motion to dismiss based on the doctrine of *forum non conveniens*. At the hearing, the parties introduced several thousand pages of exhibits and two witnesses were called. On April 13, 2004, the trial court judge signed an order granting defendants' Motion to Dismiss for *Forum Non Conveniens*. On June 2, 2004, the trial court judge signed findings of fact and conclusions of law which were filed on July 30, 2004. Appellants appeal raising seven issues.

## III. STANDARD OF REVIEW

### A. Forum Non Conveniens

A trial court's denial of jurisdiction based on *forum non conveniens* is reviewed on the abuse of discretion standard. *See Coots v. Leonard,* 959 S.W.2d 299, 301 (Tex.App.-El Paso 1997, no writ) (citing *Couch v. Chevron Int'l Oil Co., Inc.,* 672 S.W.2d 16 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.)). The test for abuse of discretion is whether the trial court acted arbitrarily and unreasonably, without reference to any guiding principles and rules. *See Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.1939); *Coots,* 959 S.W.2d at 301. An abuse of discretion does not occur merely because the reviewing court would act differently than the trial court. *See Downer v. Aquamarine Operators, Inc.,*

701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ The doctrine of *forum non conveniens* allows the courts to exercise equitable power to prevent the imposition of an inconvenient jurisdiction on a litigant, upon a court's determination that the interests of the litigants and witnesses warrant a different forum. *See Keller Dev., Inc. v. One Jackson Place, Ltd.,* 890 S.W.2d 502, 505 (Tex.App.-El Paso 1994, no writ). A court must consider the private and public factors. *See id.* The private factors are:

(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process for attendance of unwilling witnesses; and

(3) the enforceability of a judgment if one is obtained.

*See id.* (citing *Flaiz v. Moore,* 359 S.W.2d 872, 874 (Tex.1962) (adopting the factors announced in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947))).[3]

■ The public factors are:

(1) the burden imposed upon the citizens and courts of Texas in trying a case that has no relation to Texas;

(2) the general interest in having localized controversies decided locally; and

(3) the interest in having a diversity case tried in a forum that is familiar with the law that must govern the action.

*See id.* A plaintiff's choice of forum is not disturbed unless the balance of factors strongly favor the defendant. *See id.* (citing *Keller Dev., Inc.,* 890 S.W.2d at 505-06;

*Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. at 843).

■ A defendant has the burden to invoke the doctrine of *forum non conveniens* and prove all elements. *See Sarieddine v. Moussa,* 820 S.W.2d 837, 841 (Tex.App.-Dallas 1991, writ denied). The doctrine presumes that at least two forums are available to a plaintiff, and once a defendant establishes the availability of another forum, the plaintiff has the burden to prove the second forum is inadequate. *See id.*

■ A foreign forum is available if it has jurisdiction over all parties and the entire case, or if any evidence exists that all defendants are amenable to process at that forum. *See Sarieddine,* 820 S.W.2d at 840-41. A defendant may also consent to jurisdiction and thus make a forum available. *See id.*

■ The parties have signed various agreements which provide that English law shall govern any disputes related thereto. Further, BP has filed suit in England. The English lawsuit has been abated, pending a determination of the *forum non conveniens* issues by the Texas courts. England is an available alternative forum.

The alternative forum must also be adequate. Appellants do not appear to argue that an English court would be inadequate. It is clear from the record that the English courts do in fact have jurisdiction over the parties and have exercised jurisdiction. The matter pending before the English courts has been abated but it is clear that it may be revived. We hold that Appellants have not established the forum's inadequacy.

---

**3.** The *Gulf Oil Corp.* factors were partially superseded by statute and apply only when a different state or country is involved as the alternate forum. *See Cowan v. Ford Motor Co.,* 713 F.2d 100, 103 (5th Cir.1983).

We finally reach the consideration of the *Gulf Oil Corp.* factors to determine whether the balance favors the defendants such that the plaintiffs' choice of forum should be disturbed.

### B. Private Factors

The three private factors are: (1) relative ease of access to sources of proof; (2) availability of compulsory process; and (3) enforceability of a judgment obtained. *See Keller Dev., Inc.,* 890 S.W.2d at 505.

■ This controversy involves a highly complex plan to implement an international project of mammoth scope creating a liquid propane gas distribution system for the nation of India. As we noted previously, the parties are all foreign corporations. The Appellants are three Mauritius companies who pursued negotiations with large, multinational corporations, BP International Ltd. and BP Oil International Ltd. and their related entities. The Appellants are complaining about the action of the BP defendants related to an international project that involved foreign corporations negotiating about a project that would not take place on American soil.

In November 1997, BP International Ltd. signed a Confidentiality Agreement with an entity apparently related to the Appellants, Wimco, which provided BP International Ltd. an opportunity to obtain more detailed information about and conduct a more thorough analysis of the project. The discussions and meetings related to this stage of the negotiations took place primarily in England. None of the discussions or meetings took place in Texas, or even the United States.

On April 27, the Executive Committee for BP International was scheduled to meet in London and discuss the project. Fred Jones, the primary representative for Appellants, was traveling to Tulsa, Oklahoma from London and stopped in Dallas during his journey. BP International's representatives contacted Jones via telephone in Dallas to inform him about the decisions made by the Executive Committee with regard to the project. Jones contends that during that phone conversation of less than 15 minutes duration, BP International committed to the project. BP International contends, and the Appellants do not dispute, that of the thousands of contacts between the parties regarding this project, only the single phone call while Mr. Jones was on layover in Dallas involved Texas or even the United States in any way.

In July 1998, Appellants and BP International Ltd. entered into an MOA which described the rights and obligations of the parties related to the Indian LPG project. The agreement was negotiated and signed outside the United States. The agreement provided that the parties had the right and obligation to "co-operate, to facilitate a full due diligence investigation into all aspects of the Project...." Significantly, the MOA contains a requirement that any disputes related to the agreement be construed under English law, and to have those disputes determined by an English Court. The parties agreed that the existence of the choice of law and venue clauses in the agreement is a factor that may be considered by the court in evaluation of the *forum non conveniens* factors.

From July 1998 until December 1998, BP International conducted due diligence on the project and meetings and discussions took place among the parties. These activities took place primarily in London with some meetings occurring in India. None took place in Texas. In late December 1998, BP International decided to withdraw from participation in the project and informed Appellants' representatives at a meeting in London.

In April of 2002, Appellants filed suit in Dallas, Texas alleging that BP had committed fraud based upon the phone call to Jones that occurred in Dallas on April 27, 1998. We agree with Appellees that the substance of this dispute involves a foreign commercial dispute between corporate plaintiffs from Mauritius and corporate defendants from the United Kingdom. Texas has little, if any, interest in or involvement in the underlying dispute.

It appears from the evidence presented that the primary witnesses to the dispute are not located in Texas, but rather in England. Included in the record is a list of proposed witnesses which contains over 300 names the majority of which reflect a contact address outside the United States. In this broad based, international dispute, it appears as if the long list of witnesses includes many individuals who may or may not be subject to compulsory process in either jurisdiction. It appears from the record that Texas has no greater power to compel the appearance of the international witnesses than does England. Further, it is clear from the record that the parties to this dispute are sophisticated world travelers, "international entrepreneurs" for whom global meetings and world travel are a regular occurrence.

We recognize that the production of documentary evidence in this global dispute may be complex. We also recognize the reality of the tremendous assistance that technology provides to document management and analysis. BP's related documents are in England or India. We do not find Appellants' argument that the difficulties associated with production of documents related to this litigation in England, because the documents were previously transported to Texas by the Appellants, is persuasive as evidence of a "private factor" reason to keep the litigation in Texas.

Finally, the enforceability of a judgment should Appellants prevail in a suit against the Appellees, is not an issue because the parties have submitted to the jurisdiction of the English courts.

### C. Public Interest Factors

The public factors are: (1) burden imposed upon the citizens and courts of Texas in trying a case that has no relation to Texas; (2) general interest in having localized controversies decided locally; and (3) interest in having a diversity case tried in a forum that is familiar with the law that must govern the action. See Keller Dev., Inc., 890 S.W.2d at 505.

 This suit does not involve a local dispute. The parties are all foreign corporations, though we recognize that the BP International defendants have contacts with Texas including employees and ongoing projects. The events and negotiations related to this suit, however, originated from events occurring outside of Texas. The events themselves were governed by laws completely unrelated to Texas. We find no justification for burdening Texas citizens and courts with litigation that has already produced thousands of pages of pretrial appellate record. We find no merit to Appellants' argument that the suit should be kept in Texas merely because the Appellants' representative was passing through Texas when he received a phone call discussing the project between the parties. Similarly, the fact that some of the other potential multinational corporate investors had ties to Texas is not evidence of a "public factor" justifying retention of this litigation in Texas.

We agree with Appellees that the argument propounded by Appellants that the harm suffered by the Appellants as a result of the call occurred in Texas because of damage to their ability to obtain other investors is specious. This project was a

global, international proposal, involving global participants but dealing with an Indian project. If a tort occurred, it is inextricably intertwined with the fundamental basis for the relationship between the parties, the potential Indian project, the Confidentiality Agreement providing for resolution of any disputes in England under English law, and the MOA, also invoking the jurisdiction of English courts. Virtually all the discussions, negotiations, exchange of information and decisions related to the project took place outside Texas and the United States. The fortuitous contact consisting of a single phone call to Appellants' representative as he passed through Texas weighs in favor of the trial court's finding that the public factors weigh against Appellants' choice of a Texas forum.

We agree that the fact that the parties are already subject to the jurisdiction of the English courts weighs strongly in favor of the trial court's determination. Further, it appears that even if a tort claim in favor of the Appellants may be asserted, it is related to the contractual agreements between the parties. The contracts are clearly governed by English law. An action generally should be tried in a court familiar with the law governing the case. *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. at 843. We agree with Appellees that the potential choice of law controversy weighs heavily in support of the trial court's decision to dismiss.

Appellants have characterized the trial court's decision in this case as an abuse of discretion, primarily related to the court's findings and conclusions for the reason that the findings and conclusions were not supported by legally or factually sufficient evidence. We note that the trial court conducted a hearing on the issue of *forum non conveniens* and was presented with testimony from two witnesses and several

thousand pages of documents and deposition excerpts, resulting in eight volumes of the reporter's record on appeal. The findings of fact and conclusions of law is a document consisting of twenty-four pages which includes a detailed description of the procedural background of the case, twenty-six findings of fact that track the *Gulf Oil Corp.* factors in detail, and thirty-five conclusions of law that support the trial court's determination.

The evidence is overwhelmingly favorable to the trial court's judgment. We overrule Appellants' Issue No. One that the trial court abused its discretion in dismissing the suit under the *forum non conveniens* doctrine. Because this issue is dispositive of this appeal, we do not reach Appellants' remaining issues.

Having overruled Appellants' Issue No. One on review, we affirm the judgment of the trial court.