COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

ROBERT C. SAMUEL and SAMUEL
&              )

COMPANY, INC.,                                               )            
No.  08-02-00010-CV

                                                                              )

Appellants,                         )                 Appeal from the

                                                                              )

v.                                                                           )          
County Court at Law #5

                                                                              )

KTVU PARTNERSHIP,                                       )         
of El Paso County, Texas

                                                                              )

Appellee.                           )                 
(TC# 97-3038)

                                                                              )

 

MEMORANDUM   OPINION

 

This appeal arises
out of several landlord‑tenant disputes concerning the rights and
obligations of the parties under a twenty‑year building lease.  Appellants Robert C. Samuel and Samuel &
Company, Inc. appeal from a final judgment rendered in favor of Appellee KTVU
Partnership (AKTVU@) after a jury verdict, which also
incorporated a partial summary judgment order and a directed verdict on
insurance overcharge damages.








Appellants raise
five issues, two of which contain sub‑issues, for review on appeal:  (1)(a) Should the jury have been asked to
determine the intentions of the parties when the trial court failed to rule
that any portion of the building lease was ambiguous and the pleadings fail to
point out any ambiguity?; (1)(b) Is Appellant Mr. Samuel entitled to an
injunction to have the offending dishes removed from the roof and to enjoin
Appellee from installing any dishes beyond those allowed under the lease?;
(2)(a) If the landlord breached the contract is tenant entitled to cost of a
new roof as damages?; (2)(b) Did Appellee release any claims it had for the
roof?; (3) Did the trial court err in granting partial summary judgment that
the rent payable was calculable based on exactly 12,000 square feet?; (4) Did
the trial court err in granting partial summary judgment in favor of Appellee
on their entitlement to parking on the adjacent land?; and (5) Did the trial
court err in awarding $7, 212 to Appellee for insurance overcharges?  We affirm.

BACKGROUND

On January 24,
1994, Appellant Robert C. Samuel and Station Manager Larry Pepin, on behalf of
KCIK‑TV/FOX‑14, entered into a twenty‑year lease of a
building located at 6004 North Mesa in El Paso for the purpose of operating a
television station.  Under the terms of
the lease, Mr. Samuel, the landlord, was required to maintain the roof,
foundations, and structural portions of the building=s
walls in good order, repair, and condition except for damage due to the acts or
omissions by the tenant, KCIK‑TV/FOX‑14, its employees or
invitees.  The lease provided that the
tenant, after giving a request to the landlord, could make the repairs required
of the landlord and deduct the costs from rent due or make emergency repairs as
needed.  Under Section 28.15(O) entitled AAdditional Provisions,@ Mr. Samuel at his sole cost and
expense was responsible for providing space in front of the building for the
placement of the station=s
Simulcast Receiver and providing space for two microwave dishes, six feet each,
on the southern area of the roof.  Mr.
Samuel was also responsible for installing a new roof prior to April 1, 1994,
at his sole cost and expense.  In August
1996, the building lease was assigned to Appellee KTVU pursuant to an asset
purchase agreement between KFOX‑TV (formerly KCIK), Cox Broadcasting,
Inc., and KTVU.  KTVU continued to
operate a television station at the premises. 









On September 10,
1997, KTVU filed suit against Mr. Samuel, alleging inter alia breach of
the lease for failure to properly install a new roof or care for the existing
roof.  KTVU also sought a declaratory
judgment that under the lease it can install additional satellite dishes beyond
the three mentioned in the AAdditional
Provisions@ and
sought an accounting of insurance payments and return of any insurance
overcharges.  Appellants filed a
counter-claim, alleging that KTVU breached the lease by installing antennas and
satellite/microwave dishes on the roof in numbers not permitted under the
lease.  In their counter-claim,
Appellants sought a declaratory judgment that the lease restricts the tenant to
two microwave dishes on the roof and that Appellants were entitled to
indemnification pursuant to lease provisions. 
Appellants also sought permanent injunctive relief for placement of any
antennas, aerials, or dishes on the roof except for the two microwave dishes
specified in the lease.  

On December 30,
1998, Appellants filed a motion for partial summary judgment and Appellee filed
its response and a cross‑motion for summary judgment.  On August 9, 1999, the trial court granted
partial summary judgment, inter alia determining the amount of rent
payable under the lease and KTVU=s
right to use the parking lot adjacent to the building.  The remaining issues of the case were
submitted to the jury.  After a trial on
the merits, the jury returned a verdict which found that Mr. Samuel had failed
to comply with the lease provisions concerning the roof and insurance
charges.  The jury also found that when
Mr. Samuel and KCIK signed the building lease they both did not intend that the
lessee could install only two microwave dishes on the southern area of the roof
and one simulcast dish in front of the building.  Further, the jury found that KFOX leased the
roof of 6004 North Mesa when it leased the building from Mr. Samuel.  The jury assessed damages at $50,000 for Mr.
Samuel=s failure
to comply with roof‑related provisions and measured attorney fees in the
amount of $45,000.








After the jury
returned its verdict, the trial court rendered a directed verdict on the amount
of insurance overcharges and rendered a final judgment in favor of KTVU.  Appellants filed motions for judgment
notwithstanding the verdict and for a new trial, which the trial court
denied.  Appellants Mr. Samuel and Samuel
& Company, Inc. now timely appeal.  

DISCUSSION

Jury
Charge:  Submission of Question Nos. Four
and Six

In Issue One,
Appellants contend that the trial court erred in submitting jury question
four  because the trial court never ruled
that the lease was ambiguous and if it had, such ruling would have been
erroneous.  Appellants also argue that
submission of question four was error because Appellee=s
written pleadings failed to point out any particular paragraph of the lease and
spell out the meaning placed on that portion by Appellee or to assert that any
provision of the lease is subject to two or more reasonable interpretations.

We review the
trial court=s charge
to the jury under the abuse of discretion standard.  See Tex.R.Civ.P.
277; Texas Dept. of Human Services v. E.B., 802 S.W.2d 647, 649 (Tex.
1990) (Opin. on reh=g).  The trial court may submit to the jury issues
raised by the written pleadings and the evidence adduced at trial.  See Tex.R.Civ.P.
278; Green Int=l,
Inc. v. Solis, 951 S.W.2d 384, 391 (Tex. 1997).  An error in a jury charge is reversible only
if it probably caused the rendition of an improper judgment.  See Tex.R.App.P.
44.1(a)(1); Barham v. Turner Construction Co. of Texas, 803 S.W.2d 731,
735 (Tex.App.‑‑Dallas 1990, writ denied).








Question four
asked the jury to determine Awhen
Robert C. Samuel and KCIK signed the building lease, that they both intended
that the lessee could install only two microwave dishes on the southern area of
the roof and one simulsat dish in front of the building.@  The jury answered ANO@ to this question.  Appellants argue that the building lease is
not ambiguous, thus Appellants are asserting that the question of party intent
was a legal question that should not have been submitted to the jury.

The meaning of a
contract should be submitted to the jury as a fact question only if the
contract is ambiguous.  See Coker
v. Coker, 650 S.W.2d 391, 393-94 (Tex. 1983).  Whether a contract is ambiguous is a question
of law for the court to decide.  National
Union Fire Ins. Co. Of Pittsburg, PA v. CBI Indus., Inc., 907 S.W.2d 517,
520 (Tex. 1995); Coker, 650 S.W.2d at 394.  We review the trial court=s grant of summary judgment de novo as
a question of law.  See Macias v.
Rylander, 40 S.W.3d 679, 683 (Tex.App.‑‑Austin 2001, pet.
denied).  The determination of whether a
contract is ambiguous is made by looking at the contract as a whole in light of
the circumstances present when the parties entered into the contract.  CBI Indus., Inc., 907 S.W.2d at 520; Coker,
650 S.W.2d at 394.  In an effort to
harmonize and give effect to all the provisions of the contract, we examine and
consider the entire writing so that none will be rendered meaningless.  CBI Indus., Inc., 907 S.W.2d at
520.  No single provision will control;
rather, all the provisions must be considered with reference to the whole
instrument.  Id.  The primary concern of a court when
construing a written contract is to ascertain the true intent of the parties as
expressed in the instrument.  Id.  If a contract is worded in such a way that it
can be given a definite or certain legal meaning, then it is not
ambiguous.  Id.; Coker, 650
S.W.2d at 393.  A contract will only
become ambiguous if its meaning is uncertain or it is subject to two or more
reasonable interpretations.  CBI
Indus., Inc., 907 S.W.2d at 520; Towers of Texas, Inc. v. J & J
Systems, Inc., 834 S.W.2d 1, 2 (Tex. 1992).








In the absence of
an express finding of ambiguity, the trial court=s
submission of a jury question on a contract gives rise to an inference that the
trial court found the contract to be ambiguous because if it had not, it could
only have interpreted the contract as a matter of law.  See Exxon Corp. v. West Texas Gathering
Co., 868 S.W.2d 299, 302 (Tex. 1993). 
Moreover, a court may conclude that a contract is ambiguous even in the
absence of such a pleading by either party. 
See Sage Street Assocs. v. Northdale Constr. Co., 863 S.W.2d 438,
445 (Tex. 1993).  If a contract is deemed
ambiguous by the court, interpretation of the instrument becomes a fact issue
for the jury.  Coker, 650 S.W.2d
at 394.

With respect to
submission of jury question four, Appellants argue that Section 28.15(O) of the
lease agreement is not ambiguous because the number of microwave dishes
permitted under the lease is specifically mentioned, thus restricting the
installation of more than the allowed number. 
Section 28.15(O) Additional Provisions provides:

Landlord shall at Landlord=s sole cost and expense:

 

1.         Enclose the stairwell and install an
elevator to the 2nd floor before April 1, 1994.

2.         Provide a Tenant finish allowance not
to exceed $60,000.00 subject to Landlord=s
approval.

3.         Provide space in front of Premises for
the placement of the Simulcast Receiver. 
Provide space for two microwave dishes (6 ft. each) on  southern area of roof.

4.         New roof prior to April, 1994

 

Tenant shall at Tenant=s sole cost and expense:

 

1.         Said installation of the microwave and
simulcast, as described in number 3 above, shall be at Tenant=s sole costs and expense.

2.         Tenant may install a new HVAC unit for
the control room at Tenant=s
sole cost and expense and shall assume the maintenance, repair, replacement,
and servicing of the said unit. 

 








In Appellee=s written pleadings it argued that the
lease is ambiguous because it does not restrict the number of antennas or
dishes in any provision, including Section 28.15(O).  Appellee interprets this provision to be a
description of what equipment the tenant was going to install at that time,
rather than a restriction.  Further,
Appellee pled that Section 5.02 of the lease allows the tenant to remove
satellite dishes and satellite receiving and transmitting links, thus clearly
contemplating a multiple number of these items. 
Since Section 28.15(O) does not reference a satellite dish, Appellee
contends, additional satellite dishes must have been contemplated.  

Appellants= interpretation of the lease agreement
with respect to the tenant=s
right to install additional dishes is certainly reasonable, particularly given
that the lease is silent as to installation of additional dishes by the tenant
in the other lease provisions.  However,
Appellee=s
interpretation of the lease on this issue is not unreasonable.  In Section 5.02, the lease agreement
stipulates the tenant=s
rights and obligations as to all alterations, changes, additions, and
improvements to the premises during and at the expiration of the lease
term.  In pertinent part, Section 5.02
provides:

Any alterations, changes, additions and
improvements shall immediately upon the termination of this lease become
Landlord=s
property, be considered part of the Premises, and not be removed at or prior to
the end of the Lease Term without Landlord=s
written consent unless Landlord requests Tenant to remove same, with the
exception of all equipment, satellite dishes, lighting systems,
associated with the operation of a television station including, but not
limited to master control, production control, studio, satellite receiving
and transmitter links.  [Emphasis
added].

 








Appellee=s
written pleadings sufficiently put Appellants on notice that they held
differing interpretations of the lease with respect to the number of permissible
dishes and Appellee=s
interpretation is reasonable upon examination of the lease agreement as a
whole.  Thus, we conclude that Section
28.15(O) is an ambiguous provision, which created a fact issue as to party intent
for the jury to decide.  Accordingly, we
overrule that portion of Appellants=
Issue One which challenges the trial court=s
submission of question four to the jury.

Within Issue One,
Appellants argue that the trial court also erred in submitting jury question
six because it was a legal question.  In
Appellants= motion
for new trial and at trial, they asserted that question six was a legal question
to be determined from the interpretation of the lease by the court from the
four corners of the document and not by the jury.  

Question six asked
the jury to determine whether AKFOX
leased the roof of 6004 N. Mesa when it leased the building from Mr. Samuel.@ 
The jury answered AYES@ to this question.  In Appellants=
objection to question six prior to its submission to the jury, Appellants= counsel argued that the building lease
clearly did not include lease of the roof any more than it included lease of
the walls or the foundation of the building. 


On appeal, we
understand Appellants to be challenging the trial court=s
implicit determination that the lease was ambiguous with respect to whether
Appellee=s lease
of the building included lease of the building=s
roof.  Section 1.02 of the lease
provides:

Leased Premises:  Landlord hereby leases to Tenant, and Tenant
hereby rents from Landlord, the premise designated as 6004 N. Mesa Building or
as outlined in red on Exhibit >A= (herein called >the
Premises=), with a
front width of approximately 103.2 feet and a depth of approximately sixty‑eight
feet 8 inches measured to the exterior face of all walls, containing
approximately 12,000 square feet.  

 

Exhibit A of the lease provides an
outline of the ABank
Building,@ along
with its dimensional measurements and the roof elevation.  Section 3.01 of the lease provides in
pertinent part:

Use of Premises:  The premises shall be occupied and used by
Tenant solely for the purpose of conducting therein the business of a
Television Station.  

 








In its pleadings,
Appellee argued that under Section 3.01 of the lease its assignor KFOX,
formerly KCIK, leased the entire building for use as a television station.  Appellee argued that in the alternative, the
lease is ambiguous on this issue and should be construed that KCIK and then
KFOX leased the roof of the building under the lease.  Appellee=s
interpretation of the lease is as reasonable as Appellants= interpretation, given that Section
1.02 and Exhibit A can be construed to refer to the entire building, which
would presumably include its roof for purposes of operating a television
station--the only use permissible under the lease terms.  We conclude that the lease in this regard is
ambiguous, raising a fact issue for the jury. 
Therefore, the trial court did not abuse its discretion in submitting
this issue to the jury based on Appellee=s
pleadings and the evidence presented at trial. 
See Tex.R.Civ.P.
278.  We overrule that portion of Issue
One that challenges the submission of question six to the jury.

Sufficiency
of the Evidence to Support Jury Findings to Question Nos. Four and Six

Within Issue One,
Appellants challenge the factual sufficiency of the evidence to support the
jury=s finding
that when Appellant Mr. Samuel and KCIK signed the building lease, they both
did not intend that the lessee could install only two microwave dishes on the
southern area of the roof and one simulcast dish in the front of the building.  Appellants also challenge the legal and
factual sufficiency of the evidence to support the jury=s
affirmative answer to question six: whether the tenant leased the roof of 6004
North Mesa when it leased the building from Mr. Samuel. 








In reviewing the
legal sufficiency of the evidence, we consider only the evidence that tends to
support the jury=s finding
and disregard all contrary evidence and inferences.  Z.A.O., Inc. v. Yarbrough Drive Center Joint
Venture, 50 S.W.3d 531, 538 (Tex.App.‑‑El Paso 2001, no
pet.).  If there is more than a scintilla
of evidence to support the jury=s
finding, the legal insufficiency challenge fails.  Z.A.O., Inc., 50 S.W.3d at 538. 

Our review of the
factual sufficiency of the evidence of a jury=s
finding requires that we consider all of the evidence to determine whether the
questioned finding is so against the great weight and preponderance of the
evidence as to be manifestly unjust.  In
re King=s Estate,
244 S.W.2d 660, 661 (Tex. 1951); Oechsner v. Ameritrust Texas, N.A., 840
S.W.2d 131, 136 (Tex.App.‑‑El Paso 1992, writ denied).  However, we may not substitute our
conclusions for those of the jury.  Herbert
v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988).  If there is sufficient probative evidence to
support the finding, it must be sustained.  Oechsner, 840 S.W.2d at 136.  Further, the jury, as trier of fact, is the
sole judge of the witnesses=
credibility and the weight given to their testimony.  Winfield v. Renfro, 821 S.W.2d 640,
645 (Tex.App.--Houston [1st Dist.] 1991, writ denied).  It is not the province of the reviewing court
to interfere with the jury=s
resolution of conflicting evidence and the jury=s
verdict on such matters is generally regarded as conclusive.  Oeschner, 840 S.W.2d at 136; Chandler
v. Chandler, 842 S.W.2d 829, 833 (Tex.App.‑‑El Paso 1992, writ
denied). 

Jury
Finding on the Parties=
Intent








At trial, Mr.
Larry Pepin, former station manager of Appellee=s
assignor, KCIK (later KFOX) testified that the station approached Mr. Samuel
about leasing his bank building at 6004 North Mesa around November or December
of 1993.  During negotiations KCIK, a
television station, knew that it would have to renovate the facility because
the building had been vacant for a couple of years and had been previously used
as a bank.  At their current location on
Stanton Street, KCIK was operating with three stationary dishes, approximately 13
to 15 feet across, a couple of small mesh dishes, approximately six to seven
feet in diameter, and three microwaves, two that pointed to their transmitter
tower and one that the station used as a backup in the event their transmitter
went off the air.  Mr. Pepin stated that
at that time what they really needed were three dishes, a large dish to receive
their syndication programs and two microwave dishes to communicate with their
transmitter and the cable headant, so that the cable company could pick up their
signal in the event that they went off the air.

According to Mr.
Pepin=s
recollection, Mr. Samuel initially objected to all of the dishes.  Mr. Pepin stated that in their meeting with
Mr. Samuel, they told Mr. Samuel that satellite dishes are a necessity for a
television station.  They also told him
that they absolutely had to have a big dish in front to receive syndicated
product.  Mr. Pepin had the impression
that Mr. Samuel was concerned that his property would become a dish farm.  However, Mr. Pepin recalled telling Mr.
Samuel that technology in this business is constantly changing and that dishes
are getting much smaller.  Mr. Pepin stated
that he told Mr. Samuel, A>The technology is just moving very
rapidly in the business.  Unfortunately
satellite dishes are part of the business.=@ 
From KCIK=s
perspective, they could not have been able to operate without the satellite
dishes.  If the lease had restricted
future placement of dishes on the building there was no way they would have
signed it.  








Mr. Pepin recalled
that Mr. Samuel was the one who insisted on a twenty-year lease, while KCIK had
initially offered four or five-year successive terms.  Mr. Pepin also testified that it was his
understanding that under the lease, the station had the right to install additional
dishes if they needed them and to take the equipment with them when they left
the premises.  On cross-examination, Mr.
Pepin testified that references to the simulcast receiver and two microwave
dishes in Section 28.15(O) of the lease were to what the station needed when he
signed the lease for KCIK.  Mr. Pepin
conceded that it was not specifically written that the station could add
additional dishes onto the roof. 
However, on redirect, Mr. Pepin testified that Section 28.15(O) in his
opinion does not restrict additional dishes.

Appellee also
introduced the testimony of Mr. Donald Caparis, the former general manager of
KCIK, and later KFOX when the station changed its call letters.  Mr. Caparis testified that the issue of
satellite dishes came up during lease negotiations.  Mr. Caparis stated that it was discussed only
insofar as what the station needed at that time.  Mr. Caparis did not recall Mr. Samuel
objecting to the presence of satellite dishes. 
Mr. Caparis testified that they would not have signed a lease that would
limit their future expansion concerning dish needs.  According to Mr. Caparis, they knew they
would need more dishes down the line. 
The particular lease provision describing the two microwave dishes and a
simulcast receiver was put into the lease because, as Mr. Caparis recalled,
that was what they needed at the time.  

By deposition,
Appellant Mr. Samuel testified that he knew a television station was going to
be occupying the premises during the negotiations leading up to execution of
the lease.  Mr. Samuel also stated
that he allowed assignment of the lease from KCIK, then known as KFOX-TV, to
KTVU.  Mr. Samuel recalled that he did
not want the dishes, but reluctantly agreed to them in the original lease.  Mr. Samuel stated that the parties had quite
a bit of discussion regarding the approval of three dishes.  However, Mr. Samuel did not know from their
negotiations that if he did not provide the station with space for dishes, they
were not going to lease from him.  








Mr. Kevin Reed, an
attorney specializing in communications law in Washington, D.C. was involved in
negotiations to obtain Mr. Samuel=s
consent to assignment of the lease to KTVU in 1996.  Mr. Reed testified by deposition that his
client thought the lease was clear enough, but they wanted to add a provision
in the First Amendment to the Lease concerning KTVU=s
ability to install additional equipment on the roof for transmission and reception
of satellite transmissions.  Mr. Reed
recalled that his client was clearly dissatisfied with the current lease and
given the difficult relationship that was starting to arise, they wanted to Anail down@
what rights KTVU had under the lease. 
Specifically, Mr. Reed stated, AWe
didn=t want
any ambiguity at all.  We thought the
lease was clear enough as to the fact that we could make modifications to the
exterior by putting satellite dishes up there, but we didn=t want any ambiguity creeping into the
relationship, because it had not gotten off to a good start.@ 


After reviewing
all the evidence in the record under the factual sufficiency standard of
review, we cannot conclude that the jury=s
determination as to the parties=
intent  is against the great weight and
preponderance of the evidence.  We
overrule that portion of Appellant=s
Issue One which challenges the factual sufficiency of the evidence to support
the jury=s finding
to question four.

Jury
Finding on Lease of the Roof








At trial, Mr.
Pepin testified that during negotiations over the lease, Mr. Samuel insisted
that KCIK lease the entire building, even though the station at that time did
not need 12,000 square feet.  Mr. Pepin
recalled that Mr. Samuel told him that he wanted to deal with just one
tenant.  With respect to dishes on the
roof, Mr. Pepin testified that most of the dishes are mounted to the wall and
that there are two that are resting on the roof, either on a felt pad or rubberized
mat and secured by cinder blocks. 
According to Mr. Pepin, when he entered into the agreement with Mr.
Samuel, he intended to lease the roof of the building at 6004 North Mesa.  At trial, Mr. Andrew Cohn, Mr. Samuel=s right-hand-man, testified that in his
1997 correspondence to Appellee he had indicated to them that they had no right
to access the roof of the premises without the landlord=s
consent.  John Folmer, a real estate
agent involved in the lease negotiations testified that Mr. Caparis and Mr.
Pepin indicated that they did not need to lease the entire building when they
lease 6004 North Mesa, but did so.  

The evidence
discussed above is legally sufficient to support the jury=s determination that the lease included
the roof.  With regard to Appellants= factual sufficiency challenge, we
cannot conclude that the jury=s
determination that the lease included the lease of the roof is against the
great weight and preponderance of the evidence. 
We overrule that portion of Appellants=
Issue One which challenges the sufficiency of the evidence to support the jury=s finding to question six.

Injunctive
Relief

Within Issue One,
Appellants argue that the trial court should have granted their request for an
injunction to forbid Appellee from installing additional roof antennas and
satellite dishes in violation of Section 28.15(O) of the lease.  Appellants also argue that this Court should
grant injunctive relief, by which we understand Appellants to be asserting on
appeal that they established their entitlement to such relief as a matter of
law.  

We review the
granting or denial of a permanent injunction for an abuse of discretion.   Jim Rutherford Investments, Inc. v.
Terramar Beach Cmty. Ass=n,
25 S.W.3d 845, 848 (Tex.App.‑‑Houston [14th Dist.] 2000, pet.
denied).  A party requesting injunctive
relief must show: the existence of a wrongful act; the existence of imminent
harm; the existence of irreparable injury; and the absence of an adequate
remedy at law.  Id. at 849. 








Appellants rely on
Bales v. Jones, 288 S.W.2d 266 (Tex.Civ.App.‑‑Fort Worth
1956, writ ref'd n.r.e.) in arguing that when a tenant admits to a violation of
the lease, the landlord has established its right to an injunction.  In Bales, the landlord brought suit to
permanently enjoin his tenant from violating a lease provision which prohibited
stocking, displaying, and selling of merchandise not customarily carried in an
auto accessories store.  Bales,
288 S.W.2d at 267.  In that case, the
court held that the trial court was entitled to grant the relief requested
because the tenant himself admitted every element requisite to establishing the
landlord=s right
to the injunction.  Id. at
268.  The court found that under the
circumstances, the landlord was not required to show anything other than the
tenant=s breach
of his negative lease obligations.  Id.  We find the present case
distinguishable.  

Here, Appellants
point out that at trial Appellee=s
witness, Mr. Larry Pepin, testified that he observed seven dishes on the roof
and conceded that seven is more than two. 
However, as we have discussed above, there was a fact issue for the jury
as to whether the lease restricted the number of dishes on the roof to the two
dishes to be installed at the landlord=s
sole cost and expense and the jury determined that there was no such
restriction.  If even Mr. Pepin=s testimony could be characterized as
an Aadmission@
by Appellee, Appellants fail to establish as a matter of law that Appellee=s placement of additional dishes
constituted a violation of Section 28.15(O) nor do they address the remaining
requisite elements for injunctive relief. 
We overrule that portion of Appellants=
Issue One which concerns its claim for injunctive relief.  

Having reviewed
all of Appellants= sub‑issues
within Issue One, we overrule Issue One in its entirety. 

Sufficiency
of the Evidence to Support the Jury=s
Findings to Question No. 1








In Issue Two,
Appellants assert that if the jury=s
finding to question one is based on the assertion that a new roof was not
installed at the premises, then it is against the great weight and
preponderance of the evidence.  Question
one asked the jury to determine whether AMr.
Samuel failed to comply with the lease provisions concerning the roof.@ 
The jury answered AYES@ to this question.  Appellants argue that the evidence clearly
showed that a new roof was installed on or about April 1994, contrary to the
jury=s finding
if it was based on Appellant Mr. Samuel=s
failure to comply with Section 28.15(O). 


As Appellants
rightly point out in their brief, the lease contains two provisions which
specifically address the building=s
roof.  Section 28.15(O) provides that the
landlord at his sole cost and expense shall provide a new roof prior to April
1, 1994.  Section 4.01 provides in
pertinent part:

Maintenance by Landlord:  Landlord shall keep or cause to be kept the
roof, foundations and structural portions of the walls of the Premises in good
order, repair and condition except for damage thereto due to the acts or
omissions of Tenant=s, its
employees or invites [sic]. 

 

Evidently, question one was broadly
worded to address the controlling issues as to the landlord=s obligations to replace the existing
roof of the building and to provide for its continued maintenance.








At trial, Mr.
Pepin testified that in his opinion, the landlord had failed to keep the
building=s roof in
good shape.  Mr. Pepin also stated that
the landlord had failed to install a new roof prior to April of 1994.  According to Mr. Pepin, it was the station=s understanding that a brand new roof
was going to be installed on the building. 
In July 1994, Mr. Pepin went up to the roof to look at what work had
been done.  KCIK had been told that a new
roof would be installed, but to Mr. Pepin it did not look like the roofers were
installing a new roof.  Mr. Pepin
recalled that it looked like it was kind of a patch job.  When he walked around, he saw large gaps in
some of the flashing that was up against the wall and knew that if it rained
directly down on that area, water would eventually seep down underneath the
roof material.  To his knowledge, nothing
was done about this.  Mr. Pepin testified
that between 1994 and 1996 the station was constantly having roof
problems.  Mr. Pepin recalled that there
were roof leaks all the time during 1997. 
In Mr. Pepin=s
opinion, the roof looked in substantially the same condition at the time of
trial as it did in photographs of it taken in 1998.  On cross-examination, Mr. Pepin conceded that
he was not aware of every time that a roofer went up on the roof to do regular
maintenance.  

Mr. Caparis
offered testimony as to the condition of the roof during his time at the
station.  He recalled that they had
periodic problems with the roof leaking, which continued until he left in
1996.  Mr. Caparis stated that leaks were
over their cameras and other equipment, which concerned their chief
engineer.  Mr. Caparis also testified
that no new roof was installed in 1994. 
Rather, some patchwork was done to the roof.  In his opinion, the landlord did not keep the
roof in good order, repair, and condition. 









By deposition,
Appellee offered the testimony of Brian Watson, a commercial roofer who has
been in the roofing industry in El Paso for six years.  Mr. Watson recalled that his company,
Commercial Roofing Systems, did a roofing bid for the building located at 6004
North Mesa.  In their 1993 site inspection,
they determined that the roof needed to be re-roofed as it was old and in
pretty bad shape.  It had multiple leaks
into the building at that time.  In 1997,
Mr. Watson looked at the roof again and in his opinion thought it needed to be
replaced because there were major problems with it.  Mr. Watson testified that the workmanship was
terrible and that the roof was going to leak again.  In their 1997 bid, they estimated it would
cost $43,106 to replace the roof.  A
couple of weeks before giving his deposition testimony in 1998, Mr. Watson
revisited the roof of the 6004 North Mesa building and observed ponding water
on the roof, some flashing problems, and thought it still needed
replacement.  In his opinion, it was not
a good roof.  

By deposition,
Appellant Mr. Samuel testified that he believed the roof was replaced before April
of 1994.  Mr. Samuel did not recall
receiving any letters regarding the roof or problems with the roof.  Mr. Samuel recalled that he went to the
property and went up to the roof and found a hole that the tenant had put in
the roof that they fixed.  He did not see
any other problems and did not think the flashing was improperly
installed.  Mr. Samuel conceded that he
had read a letter dated March 6, 1997 from KFOX, requesting that the roof be
repaired.  He believed that any time
there has been a leak, regardless of the cause, he has had the roof repaired.

Appellee called
Ms. Noreen Jaramillo to testify as to her recollection of the roof leaks at the
building.  Ms. Jaramillo is a news anchor
at the KFOX-TV station.  She stated that
she noticed stains on their carpet on the second floor from where water had
leaked onto it.  Ms. Jaramillo also
stated that there were often buckets sitting on the building=s staircase to catch water leaking
through the roof.  Over the four years
she has worked at the station, Ms. Jaramillo noticed the buckets and the roof
leaking on a number of occasions.  








Bruce Wickes, a
maintenance employee for Mr. Samuel, testified that he started working for Mr.
Samuel in 1996.  Mr. Wickes conceded that
there had been ponding water up on the roof of the 6004 North Mesa building,
but when he looked at the roof in 1996 all the drains were functioning.  In a report prepared upon Mr. Samuel=s request, Mr. Wickes noted that along
the edge of the roof there was accumulated water from rainfall, seams were open
on both sides of the roof, and there were minor tears and openings at the lower
portion of the roof.  In the report,
Mr. Wickes recommended recoating the entire roof with a premium aluminized
fibered roof paint after all repairs have been completed.  Mr. Wickes performed various repairs to the
roof, including repair of insulation, resealing all seams and joints, and
resealing the skylight.  Mr. Wickes
testified that he did not think it was a lousy roof and felt that it could last
up to ten years, if properly maintained. 
He did not think the roof needed to be replaced at this time.  

We find that there
is some evidence to support the jury=s
finding that Appellant, Mr. Samuel, failed to comply with Section 4.01 of
the building lease.  Further, the
evidence was factually sufficient to support the jury=s
finding that the landlord had failed to comply with Section 28.15(O).  We overrule that portion of Appellant=s Issue Two which challenges the
sufficiency of the evidence to support the jury=s
finding to question one.  

Jury
Charge:  Submission of Question No. 2

Within Issue Two,
Appellants challenge the submission of jury question two, arguing that the
question should not have been submitted because:  (1) the pleadings do not support its
submission to the jury; (2) Appellee=s
pleadings mention nothing about the cost of a new roof being an element of its
damages[1];
and (3) the question was not based on the proper measure of damages. 








Question two asked
the jury to determine A[w]hat
sum of money, if any, if paid now in cash, would fairly and reasonably
compensate KFOX for its damages, it any, that resulted from Mr. Samuel=s failure to comply?@ 
The jury was instructed to consider the following elements of damages,
if any, and none other: the cost of roof repair or a new roof.  Further, they were instructed to answer in
dollars and cents for damages, if any, that Appellee sustained in the past or
will reasonably be sustained in the future. 
The jury assessed Appellee=s
damages in the amount of $50,000.

Prior to the court=s charge of the jury, Appellants= counsel objected to question two,
arguing that it was the wrong measure of damages for a tenant.  Appellants=
counsel asserted that the proper measure of damage would be whatever interior
and equipment damages the tenant suffered, but counsel did not request
submission of this measure of damages to the jury.  Appellants=
counsel also argued that the pleadings did not support the submission of any
damage issue, much less this one.

As discussed
above, we review the trial court=s
charge to the jury under the abuse of discretion standard.  See Tex.R.Civ.P.
277; Texas Dept. of Human Services, 802 S.W.2d at 649.  The trial court may submit to the jury issues
raised by the written pleadings and the evidence adduced at trial.  See Tex.R.Civ.P.
278; Green Int=l,
Inc., 951 S.W.2d at 391. 

In its pleadings,
Appellee alleged the following with regard to its roof‑related damages: 








For the past seven
years, Mr. Samuel has failed to properly install a new roof or case for the
existing roof as required by the Lease. 
Despite letters, telephone calls, and personal discussions with Mr.
Samuel and his agents, Mr. Samuel has failed to take any adequate step to comply
with the Lease concerning the roof.  Mr.
Samuel has occasionally patched the roof in a band‑aid type
approach.  As a direct and proximate
result of the repeated roof leaks, KFOX[2]
suffered damage to its interior ceilings, carpet, and an impairment of the
value of its tenancy.  Additionally, KFOX
is concerned with its ability to protect the interior of the Building including
its equipment and furnishings from the roof leaks.  The failure by Mr. Samuel to properly replace
or maintain the roof constitutes a breach of the Lease and KFOX is entitled to
monetary damages and attorneys=
fees in excess of the minimum jurisdictional limits of the Court as a result of
his breach. 

 

Appellee=s
pleading provided sufficient notice to Appellants that it sought monetary
damages based on the cost of preventing repeated roof leaks by repair or
replacement of the roof.  See Boyles
v. Kerr, 855 S.W.2d 593, 601 (Tex. 1993)(petition is sufficient if a cause
of action or defense may be reasonably inferred from what is specifically
stated).

At trial, Mr. John
Acuña testified to the cost of roof repair for the leased premises.
Mr. Acuña has been in the roofing business for approximately twenty-one to
twenty-two years.  In 1996, he received a
call from Mr. Pepin to come out and take a look at the building=s roof. 
Mr. Pepin asked Mr. Acuña to make a report on the roof, and after that,
Mr. Acuña=s company
repaired some of the immediate leaks.  In
their report, they noted that they had observed blistering, splits, and areas
of depression which were creating ponding problems.  At that time, they estimated that the roof
needed $12,000 to $15,000 worth of repairs. 
His company did not do this work. 
If a new roof had been put on the building in April 1994, in his opinion
these conditions would not have existed. 
Mr. Acuña considered a bid for $43,106 for roof repair given in June
1997 to be a reasonable bid for El Paso County. 
He also agreed that adding an additional ten percent to bring it to a
2001 estimate was reasonable.  This would
amount to approximately $47,000. 
Further, Mr. Acuña estimated that the reasonable range in El Paso County
to properly replace the roof of the building was between $45,000 to $60,000,
depending on insulation.  








The jury was
instructed in question two to consider damages, if any, based on either
the cost of roof repair or a new roof. 
The instructions permitted the jury to make its determination as to
Appellee=s damages
based on the cost of roof repairs alone or for its replacement.  The pleadings support submission of the
damages question to the jury.  Further,
there was some evidence adduced at trial to support submission of jury question
two as to Appellee=s
damages, if any, as a result of Mr. Samuel=s
failure to comply with the lease.  If
there is any evidence of probative value to support an issue, the trial court
may not refuse to submit the issue to the jury. 
See K‑Mart Corp. v. Pearson, 818 S.W.2d 410, 413 (Tex.App.‑-Houston
[1st Dist.] 1991, no writ).  Accordingly,
we overrule that portion of Appellant=s
Issue Two which challenges submission of jury question two on grounds that it
was not supported by the pleadings and evidence at trial.  See Tex.R.Civ.P.
278.

Measure
of Damages

Within Issue Two,
Appellants also argue that the correct measure of damages in question two
should have been the damage actually done to Appellee=s
property, for example, to its computer monitor and ceiling tiles, rather than
the cost of roof repairs or roof replacement. 


The primary
objective in awarding damages in civil cases has been to compensate the injured
plaintiff, not to punish the defendant.  Cavnar
v. Quality Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985).  As a general rule, damage to personal
property is measured by the difference in the reasonable market value
immediately before and immediately after injury to the property.  Central Freight Lines, Inc. v. Naztec, Inc.,
790 S.W.2d 733, 734 (Tex.App.--El Paso 1990, no writ).  However, different factual situations may
require the application of a different measure of damages.  Id. 









Appellant, Mr.
Samuel, entered into a twenty-year lease with Appellee=s
assignor for the sole purpose of operating a television station.  Under the terms of the building lease, Mr.
Samuel had an obligation to install a new roof prior to April 1, 1994, and
under Section 4.01, Mr. Samuel had a duty to maintain the building=s roof in Agood
order, repair and condition.@  Under Section 4.01, the tenant also has the
right to make repairs to the roof as required by the landlord and deduct these
costs from the next rental payment.  The
jury determined that Appellee=s
lease of the building included lease of its roof.  At trial, Mr. Pepin, the former station
manager of KCIK, testified that it had been their understanding that as part of
their lease, the landlord was to install a brand new roof on the building.  Mr. Pepin stated that the station did not do
any roof repairs, even though the lease permitted the tenant to do repairs,
because they thought it was the landlord=s
responsibility and they knew Mr. Samuel would not pay for their costs.  








In this case,
Appellee=s lease
entitled the tenant to a new roof and continued maintenance of that roof for
the length of the lease term.  In effect,
Appellee held a property right in its lease of a new roof.  Under these circumstances, the cost of
reasonable repairs to the roof was an appropriate measure of damages.  See Central Freight Lines, Inc., 790
S.W.2d at 734-35 (AWhere the
injury to the property has not resulted in its total loss and the repair of the
damaged property is economically feasible, the plaintiff may elect to recover
the reasonable cost of repairs.@).  An award of damages for breach of contract
should place the injured party as near as possible in the position that he
would have occupied had the defaulting party performed the contract.  Thomas C. Cook, Inc. v. Rowhanian, 774
S.W.2d 679, 686 (Tex.App.--El Paso 1989, writ denied).  Moreover, at trial, Appellants= counsel refused to submit an
alternative measure of damages to the jury. 
We cannot conclude that the trial court abused its discretion in submitting
jury question two to the jury and therefore, overrule Appellants= Issue Two in its entirety[3].

Partial
Summary Judgment

In Issues Three
and Four, Appellants challenge the trial court=s
partial summary judgment order regarding the amount of rent payable under the
building lease and the trial court=s
finding that Appellee has the right to park on the adjacent land that is
designated a parking lot.   








We review the
trial court=s summary
judgment de novo.  See Sasser
v. Dantex Oil & Gas, Inc., 906 S.W.2d 599, 602 (Tex.App.‑‑San
Antonio 1995, writ denied).  Summary
judgment is proper if there exists no genuine issue as to any material fact and
the moving party is entitled to judgment as a matter of law.  Tex.R.Civ.P.
166a(c); Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548‑49
(Tex. 1985).  The standards for reviewing
a summary judgment are well established: 
(1) the movant for summary judgment has the burden of showing that no
genuine issue of material fact exists and that it is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the non‑movant will be
taken as true; and (3) every reasonable inference must be indulged in favor of
the non‑movant with any doubts resolved in its favor.  Nixon, 690 S.W.2d at 548‑49.

Amount
of Rent Payable

Provisions in the
lease for the amount of rent payable are stipulated in Section 2.04 as follows:

BASIC RENTAL:

 

A. Minimum Monthly Rental:

 

(1) Tenant shall pay
to the Landlord as Minimum Monthly Rental for the Premises, the sum of Five
Thousand One Hundred Fifty Dollars and No Cents ($5,150.00) per month,
beginning May 1, 1994, which sum shall be subject to possible upward adjustment
as provided in Paragraph (2) below. Said Minimum Monthly Rental shall be paid
in advance on the first day of each month of the term, with proration to occur
for any partial month, if the Commencement Date is other than the first day of
a calendar month.  All rentals to be paid
by Tenant to Landlord shall be in lawful money of the United States of America
and shall be paid without deduction or offset, prior notice or demand, on or
before the first (1st) day of each and every month during the term hereof, and
at such place or places as may be designated from time to time by Landlord.

 

(2) RENTAL ADJUSTMENTS, MULTIPLIED
TIMES THE SQUARE FEET (see 1.02 above) DURING PRIMARY TERM BEGINNING:

 

January 1, 1999:           $5.41 p.s.f.

January 1, 2004:           $5.67 p.s.f.

January 1, 2009:           $5.93 p.s.f. 

 

Section 1.02 of the lease,
referenced in Section 2.04, pertains to the description of the leased premises.  Section 1.02 provides:

Leased Premises:  Landlord hereby leases to Tenant, and Tenant
hereby rents from Landlord, the premise designated as 6004 N. Mesa Building or
as outlined in red on Exhibit AA@ (herein called Athe
Premises@), with a
front width of approximately 103.2 feet and a depth of approximately sixty‑eight
feet 8 inches measured to the exterior face of all walls, containing
approximately 12,000 square feet.  

 








The figures A103.2
feet@ and Asixty‑eight feet 8 inches@ were handwritten into blank lines for
recording the front width and depth measurements of the leased premises.  

In Appellee=s supplemental cross‑motion for
summary judgment, it argued that the current monthly rent under the contract
was $5,410.  Appellee asserted that for
the past four years, it had paid rent to Mr. Samuel based upon the figure of
$5.15 times 12,000 square feet.  Appellee
argued that the plain language of the lease indicates that the monthly rental
payment is $5,410 per month, and sought a declaration that as a matter of law,
this is the proper amount of rent.

On appeal,
Appellants contend the trial court erred in granting partial summary judgment
that the rent payable was calculable based on exactly 12,000 square feet.  Specifically, they argue that the trial court
erred in determining that the monthly rent was based on the typed words in the
lease, A12,000
square feet,@ rather
than on the handwritten measurements, A103.2
feet@ and Asixty‑eight feet 8 inches.@ 
Appellants rely on Montgomery Ward & Co., Inc. v. Dalton, 665
S.W.2d 507, 512 (Tex.App.‑‑El Paso 1983, no writ), to support their
argument that where there is a conflict between the written and printed words
in a contract, the written words control. 
In Montgomery Ward & Co., Inc. v. Dalton, homeowners had
entered into a written contract with Montgomery Ward & Company to install
roofing on their home.   Montgomery
Ward & Co., Inc., 665 S.W.2d at 510. 
On the front page of the contract there was a handwritten description of
the materials to be used, the work to be performed, and various long‑term
guarantees of the labor and materials.  Id.  On the back of the instrument, the printed
contract terms contained only a limited warranty for installation.  Id. at 510, 512.  The present case is distinguishable in that
there is no such conflict on the face of the building lease.








Here, Section
2.04(A)(2) clearly states that the rental adjustment required is calculated by
multiplying the square feet figure given in Section 1.02 to pay increases
commencing at regular five‑year intervals.  The handwritten figures are not given in
square feet.  Moreover, they refer only
to the front width and depth of the building Ameasured
to the exterior face of all walls . . . .@  Given the definite meaning of Section 2.04=s requisite increase based on
multiplication of $5.41, $5.67, and $5.93, Ap.s.f@ that is, per square feet, we cannot
find that the parties intended otherwise. 
Accordingly, we overrule Issue Three.

Adjacent
Parking

In Issue Four,
Appellants contend that the trial court erred in determining that Appellee was
entitled to park on adjacent land owned by Appellant Samuel and Company, not
Appellant Mr. Samuel.  Appellants argue
that since Exhibit A=s
outline of the premises did not include parking areas, no such parking was
provided in Appellee=s
lease of the building.  In response, Appellees
argue that as a matter of law in Texas, the lease of an entire building
includes use of the lessor=s
adjacent land which is used with the building as necessary to its proper
occupation for the purpose for which it was intended.  In its motion for partial summary judgment,
Appellee also argued that under Section 20.64.170 of the City of El Paso=s zoning ordinance, a landlord must
provide at least one parking space for each 200 square feet of floor area in a
building.  








As a general rule,
the lease of an entire building is a lease of the ground under it, as well as
adjacent land of the lessor, which is used with the building as necessary to
its proper occupation for the purpose for which it was intended.  Bifano v. Econo Builders, Inc., 401
S.W.2d 670, 674 (Tex.Civ.App.‑‑Dallas 1966, writ ref@d n.r.e.).  In the present case, Appellant, Mr. Samuel,
apparently leases the adjacent parking lot from Appellant Samuel and Company,
Inc. and is the sole shareholder of that entity.[4]  Section 3.04 of the lease suggests to this
Court that some degree of access to non‑delivery parking was intended by
the parties when they entered into the lease agreement.  Under this section, the tenant covenants and
agrees that it will inter alia Anot
permit the loading or unloading or the parking or standing of delivery vehicles
outside any area designated therefor . . . .@  Given that Appellee leased the entire building
with the parties with the intention that the tenant would operate a television
station at the location and the strong inference that parking access was
intended pursuant to Section 3.04, we cannot conclude the trial court erred in
finding that Appellee had the right to park on adjacent land leased by
Appellant Mr. Samuel as a designated parking lot.[5]  Issue Four is overruled.

Jury
Charge:  Submission of a Jury Question on
Insurance Overcharges








In Appellants= Issue Five, they contend the trial
court erred in awarding $7,212 to the Appellee for insurance overcharges.  Specifically, Appellants argue that the trial
court erred in failing to submit a damage issue to the jury on the amount of
the alleged overcharge along with jury question seven.[6]  A review of the record shows that Appellants= counsel initially requested jury
question seven and Appellee, not Appellants, raised the objection that there
should be a damage question linked to it and the trial court overruled that
objection.  Prior to the court=s charge of the jury, Appellants
objected to their question on the grounds that there was no evidence of any
damage suffered and no evidence of any overcharge.  We find that Appellants= argument on appeal in this regard does
not comport with its objections raised at trial.  Thus, Appellants have not preserved this
issue for our review.  See Tex.R.App.P. 33.1.  Issue Five is overruled.

For the reasons
stated above, we affirm the trial court=s
judgment.

 

 

August
15, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 3

Barajas, C.J., Larsen, and Chew, JJ.











[1]
A review of the record shows that Appellants did not specifically raise an
objection to the trial court that the pleadings were inadequate for failure to
mention the cost of a new roof. 
Therefore, we do not consider that aspect of Appellants= contentions on appeal.  See Tex.R.App.P.
33.1(a); Tex.R.Civ.P. 274.





[2]
In its original pleadings in the trial court, Appellee KTVU Partnership
referred to itself as AKFOX.@ 





[3]
Within Issue Two, Appellants also contended that the trial court should have
found as a matter of law that Appellee=s
assignor in a letter dated November 17, 1995 released all prior claims against
Appellant Mr. Samuel, including those related to the roof.  The trial court evidently refused Appellant=s requested jury question on this
issue.  On appeal, Appellants do not
challenge the trial court=s
ruling.  Appellants= motion for judgment notwithstanding
the verdict does not contain its argument that the trial court should have
found that as a matter of law it established the affirmative defense of
release.  Further, Appellants= pleadings do not appear to assert its
release claim.  Release is an affirmative
defense for which Appellants had the burden to plead and produce evidence in
support of the claim.  See Tex.R.Civ.P. 94.  We do not consider Appellants= release claim, finding that the issue
was not preserved for appeal.  See
Tex.R.App.P. 33.1(a).  

 





[4]
In summary judgment evidence submitted in support of Appellee=s cross-motion for summary judgment,
Mr. Samuel in deposition testimony stated that he was the sole shareholder of
Appellant Samuel and Company, Inc. 
Samuel and Company owns the parking lot adjacent to the KFOX building at
issue.  Samuel and Company leases the
parking lot to Mr. Samuel through an oral lease.  Mr. Samuel pays rent to Samuel and Company
for the lease.  Samuel and Company leases
the parking lot to no one else other than Mr. Samuel.  Mr. Samuel admitted that in 1995 and 1996,
KCIK paid to Mr. Samuel a portion of the real estate taxes for the parking
lot.  





[5]
We also note that in his deposition testimony, Mr. Samuel testified that the
tenant pays $500 a month for common area maintenance, but he did not recall the
breakdown of this fee.





[6]
Jury question seven asked the jury to determine whether AMr.
Samuel failed to comply with the lease provisions concerning his charges to
lessee for insurance.@  The jury answered AYES@ to this question.